## CHARLESTON

Burrows v. Fitch et al.

Submitted June 8, 1906.   Decided April 18, 1907.

1. Vendor and Purchaser—*Rescission of Contract—Fraud.*
    A vendor, being ignorant of the existence of a fact materially
    affecting the value of property, negotiations for the sale and trans-
    fer of which are pending, inquires of the vendee as to the exist-
    ence thereof, and states if such fact is not known to the vendee to
    exist, he will sell him the property.  If upon the vendee stating
    that he had no knowledge upon the subject, the sale and transfer
    is consummated, it may thereafter be set aside and cancelled at the
    suit of the vendor if the vendee, at the time, knew such fact to
    exist.  (p. 117.)

2. Cancellation of Instrument—*Evidence.*
    Fraud is never presumed, and must be proved, and where it is
    charged that the vendee knew of the existence of such fact, and
    by representing otherwise, misled the vendor, to his prejudice, this
    allegation must be established by proof.  (p. 117 )

3. Appeal—*Sufficiency of Evidence.*
    An appellant asking to have a decree of a circuit court, based
    upon facts, reviewed, assume the position of a demurrant to the
    evidence, and the decree will not be reversed unless found to be
    plainly wrong.  (p. 119.)

Appeal from Circuit Court, Wetzel County.

Bill by Mont Burrows against W. R. Fitch and others.
Decree for defendants.  Plaintiff appeals.

*Affirmed.*

Hall & Hall, for appellant.
T. P. Jacobs, for appellees.

Sanders, President:

The appellant, Mont Burrows, being the owner of a one-
sixteenth interest in certain oil leases on lands in Cal-
houn county, sold and conveyed his entire interest therein
to the defendant, W. R. Fitch, for a valuable consideration.

The leases in question were acquired for the purpose of de-
veloping the same for oil and gas.   After acquiring them,
it was agreed among the owners thereof that a corporation
should be formed, which was done, by the name of the Low-

ther Oil Company, to which the leases were to be transferred, and the parties to hold stock in the company in proportion to the interest held by them in the leases. After the formation of the company, work of development began and continued for some time, until the 24th day of January, 1901, a producing oil well was drilled, and on the 26th day of the same month the contract of sale between the appellant and the defendant Fitch was consummated. The gravamen of the plaintiff's complaint is that he was induced to enter into this contract on account of false and fraudulent misrepresentation on the part of the defendant Fitch, in this, that the plaintiff lived in the town of New Martinsville, many miles from the field of operations, and did not know that oil had been discovered, and at the time of making the contract he inquired of the defendant Fitch whether or not he knew it had been found, and told him if he did not know, he would sell him his interest. That Fitch, in response to this inquiry, said he did not know whether oil had been found or not, when, as a matter of fact, he did have such knowledge.

The defendant Fitch denies all charges of fraud and denied that he knew that oil had been discovered. And the question as to whether or not he did have such notice is the real and practically the only question at issue. The legal principles controlling this cause are not controverted. They are so well settled that they can be easily applied when we have ascertained the true facts, if they can be well ascertained. If the plaintiff did not have knowledge of the existence of the well, and the defendant Fitch did have such knowledge, and if when inquiry was made of him as to this fact by the plaintiff he informed him that he had no such knowledge, this constituted fraud in fact, and is sufficient ground for the cancellation of the contract. Equity will not permit one to enjoy the fruits of a contract thus fraudulently obtained. No proposition is better settled, nor is it claimed otherwise. Fitch may not have been under any obligation or duty to inform the plaintiff of this fact, unless he had been inquired of, but when he was called upon, pending the negotiations, for this information, and he undertook to speak with reference to it, it was his duty to speak the truth. This was a material question at issue. It was important in determining the value of this property, for which Fitch paid a

small sum, and which developed into a valuable holding. We feel justified in saying that the plaintiff would not have sold this valuable property for this inadequate consideration if he had known the facts, but it can be very readily understood if the work of development had continued for some time, without any apparent success, and repeated assessments had been made against the stockholders, that he would be willing to transfer his interest for the amount that he had put into the property. And not knowing the facts, he called upon the defendant Fitch for information in this regard, and at the same time told him that he would not sell the property if he knew a well had come in, and Fitch told him that he did not know that oil had been discovered. We think it is clearly established that the plaintiff did not know of the discovery of oil, and that he made the inquiry of Fitch as claimed, and that he made the sale and transfer with the understanding that Fitch did not know that oil had been found. But this is not enough to cancel the contract. It must further appear that Fitch at that time had notice that the well had come in. Unless this is done, he cannot be charged with fraud. He would be guilty of no wrong. Therefore, to charge him with fraud, we must bring home to him knowledge of the existence of the well at the time of the sale and transfer. Fraud is not presumed, but must always be proved, and before a court will cancel a contract and release parties from its obligations, we must be able to point out the evidence and from it say that the party charged with fraud has been proved guilty. "The rule is that he who alleges fraud must prove it, and the supposed exceptions to this rule are more apparent than real. There may be *prima facie* fraud, or fraud may be proved by a number of concurrent circumstances; nevertheless, so long as the scales are evenly balanced, the defendant, against whom fraud is alleged, must prevail." *Greer et al.* v. *O'Brien et al.*, 36 W. Va. 277; *Board of Trustees* v. *Blair*, 45 W. Va. 812; *Bodkin* v. *Rollyson*, 48 W. Va. 453; *Clay* v. *Deskins*, 36 W. Va. 350. Fitch had a right to deal with reference to this property, without imparting any information which he may have had as to its value to the plaintiff, had the plaintiff not inquired of him and told him he would not sell if he knew of the well. When this information was sought by the plaintiff, with that

understanding, it became the duty of the defendant to impart it correctly. He could not, under such circumstances, speak falsely upon a matter of such vital importance to the plaintiff, and then be allowed to take advantage of his own wrong. He must, when he speaks concerning the existence or non-existence of the fact, speak the truth. If he does not, but speaks falsely, and thereby misleads, equity will not let him benefit by such conduct. *Allen* v. *Yeater*, 17 W. Va. 128; *Western Mining &c. Co.* v. *Peytona, &c. Coal Co.*, 8 W. Va. 406.

This brings us to inquire as to whether or not Fitch knew of the existence of the well at that time. Upon this question there is much conflict in the evidence. It is almost impossible to determine with any degree of certainty whether or not he did have such knowledge, and unless we can say he did, we must deny relief. The plaintiff is seeking to cancel the contract, and the burden is upon him to bring home to the defendant fraud, and to prove it as alleged. There is no direct evidence upon this subject of notice, but the plaintiff relies upon circumstantial evidence, and we find that the circumstances surrounding this entire transaction make it very suspicious indeed. True it is that fraud may be proved by circumstantial evidence, in fact, in most all cases, this is the only kind of evidence available. But while this is so, yet we must be able to say from a consideration of the evidence that the fact sought to be proved thereby has been established. *N. Y. Life Ins. Co.* v. *Davis*, 96 Va. 737. The defendant denies notice, and we must be able to say that notice has been brought home to him. Suspicious circumstances are not sufficient upon which to convict of fraud. Then, again, the circuit court, upon this conflicting evidence, has found against the plaintiff, and if we should ever apply the rule that where a decree is rendered upon conflicting evidence it will not be disturbed unless plainly wrong, it certainly has very forceable application here. "A decree of the circuit court determining questions of fact, unless plainly wrong, will not be disturbed." *Wolfe* v. *Bank*, 54 W. Va. 689. The findings of the circuit court must be against the plain preponderance of the evidence. *Weaver* v. *Akin*, 48 W. Va. 456; *Poling* v. *Boom & Lumber Co.*, 55 W. Va. 529. Where depositions are conflicting and contradictory in their

character, so that it is difficult to determine on which side
they preponderate, and different judges might reasonably dis-
agree upon the facts proved, the appellate court will refuse
to reverse a decree of the court below founded upon such
depositions, although the testimony may be such that the ap-
pellate court might have rendered a different decree if it had
acted upon the case in the first instance. *Richardson* v.
*Ralphsnyder*, 40 W. Va. 15. If this case cannot be brought
within the rule, we believe it will not find frequent applica-
tion. According to the argument of defendant's counsel,
which is not denied, this cause was considered by two emi-
nent circuit judges, the decree, of course, being entered by
the circuit court of Wetzel county, and even if we enter-
tained a different view of the evidence, we cannot reverse
unless we can see that the decree is plainly wrong. This we
cannot do, and we therefore affirm.

*Affirmed.*