## MARTIN v. NEYLAND et al.

### No. 1873.

Court of Civil Appeals of Texas. Waco.
May 13, 1937.

Rehearing Denied June 3, 1937.

Henry, Bickett & Bickett, of San Antonio, and John H. Bickett, Jr., of Dallas, for appellant.

Witt, Terrell & Witt and D: M. Wilson, all of Waco, for appellees.

ALEXANDER, Justice.

This action was brought to cancel a clay mining lease on account of alleged fraud in its procurement. A trial before the court without a jury resulted in judgment for the plaintiffs. The defendant appealed.

Appellant contends that the petition was insufficient to allege a cause of action for cancellation of the lease. The lease, a copy of which was attached to the petition, was executed by Herbert Neyland and his mother, Mrs. T. H. Neyland, appellees herein, to the appellant, John Randolph Martin. It leased the land in question to lessee "for the exclusive purpose of excavating, mining, preparing, processing and operating for clay" and bound the lessee to pay as a royalty one-eighth of all clay mined. Among other things, it provided as follows: "For a period of 4 months from date hereof, lessee has the right and option to make such explorations and tests as he may desire to determine the nature and extent of clay deposits, if any, upon or under the above described land," and further provided that, on or before the expiration of the four-month period, the lessee would select such of the acreage as he desired to retain and would release the balance. It further provided that "lessor reserves and excepts from this lease all minerals of every kind and character except clay." The plaintiffs alleged in substance that the lessee had been extensively engaged in mining and selling clay and clay products and was "well informed as to Fuller's Earth and benzonite blue, which are clay products, or forms of clay, and which are very valuable products"; that lessors were inexperienced in clay products or fuller's earth, "except that the plaintiff Herbert Neyland had heard of clay, out of which pottery was made, and had heard of Fuller's Earth, though his information and knowledge on the subject was very meager"; that prior to the making of the lease lessee had made an examination and had discovered that the land contained valuable deposits of fuller's earth, but that the lessors were unfamiliar with such fact; that lessors inquired of the lessee as to whether said land contained fuller's earth and were informed that it did not; that lessors asked lessee whether he was leasing the land for fuller's earth and lessee replied that he was leasing it for "ordinary clay," and that, as a result of these misrepresentations and concealments, the lease was procured through fraud.

It is appellant's contention that all prior negotiations leading up to its execution were embodied in the lease, and that the terms of the lease as executed were broad enough to cover all kinds of clay, and since the parties in the preliminary negotiations discussed fuller's earth, and since fuller's

earth is a form of clay and this fact was known to lessors at the time of the execution of the lease, the lessors were charged with notice at the time the lease was executed that it covered fuller's earth and they cannot now be heard to assert a contrary intention, and consequently the petition failed to state a cause of action.

■ It may be conceded that, since fuller's earth is a form of clay, and since the lease covered clay without limitation, its terms were sufficient to cover fuller's earth; but the question to be here determined is not whether the lease by its terms was broad enough to include fuller's earth, but whether the execution of the lease was procured by material false representations. If, as alleged by appellees, the lessee, who was experienced in mining clay, had examined the land and found that it contained valuable deposits of fuller's earth but in order to induce the execution of the lease represented to lessors that it did not contain fuller's earth and that he was not interested in leasing it for that purpose and lessors were ignorant of these facts and were induced to execute the lease as a result of these false representations, then the lease was procured by fraud and should be canceled as a result thereof. This principle is announced with clearness in Black on Rescission & Cancellation (2d Ed.) vol. 1, p. 115, § 47A, as follows: " * * * And a very common instance of fraud of this kind is seen in the case where the purchaser has discovered a valuable mine, quarry, or mineral deposit on the land, of which the owner is ignorant, and, not content with merely keeping his knowledge to himself, steps over the line and commits an active fraud by assuring the vendor that the land is worth nothing except for the timber on it, or that it is useless except as pasture or grazing land, or if he admits anything at all in regard to the mineral deposits, misrepresents their value or extent. In these cases, the courts have always been ready to afford relief to the defrauded vendor." See, also, 40 C.J. 967; Burrows v. Fitch, 62 W.Va. 116, 57 S.E. 283; Bowman v. Bates, 2 Bibb. (Ky.) 47, 4 Am.Dec. 677; Stackpole v. Hancock, 40 Fla. 362, 24 So. 914, 45 L.R.A. 814; Riggins v. Trickey, 46 Tex.Civ.App. 569, 102 S.W. 918; Tips v. Barneburg (Tex. Civ.App.) 11 S.W.(2d) 187.

■ Appellant further contends that the evidence is insufficient to support the judgment. It is undisputed that the lessee had had considerable experience in mining clays and particularly fuller's earth, and that lessors were inexperienced in that line. Prior to the execution of the lease, lessee wrote lessors that he was interested in locating beds of marketable clay and was making some investigation for that purpose and desired to investigate lessors' land for the purpose of finding a deposit of pure clay. Lessors granted lessee permission to make the investigation but requested that he keep them advised as to what he found. Lessee testified that he had been in the section of the state where the land was situated for several months prior to the execution of the lease searching for deposits of fuller's earth; that he usually located fuller's earth by walking over the land and digging up a sample specimen with a hand pick and having it tested. He further testified as follows:

"Q. What investigation did you make of the Neyland land before you went over to see Mr. Neyland to get this option on it? A. I saw some land on the river that belonged to some other parties and it had some out-croppings of whitish clay the same as it had on the Blunt, and I thought I had a market for that white clay and did ship some of it. While getting that market for this clay I wanted to get as much more territory around there as I could get, and that is the reason I took the Neyland land.

"Q. What investigation did you make of the Neyland tract itself? A. There was no investigation made except I walked over it and picked up a sample specimen with a little hand pick something like that. * * *

"Q. So you selected that (the Neyland land) because it presented the best possibilities of Fuller's Earth? A. That is what I thought; that it had better possibilities."

One of the appellees, who was the active one in making the lease, testified that, during the negotiations leading up to the execution of the lease, he asked appellant if the land contained fuller's earth and appellant replied that it did not; that he informed lessee that he had information that fuller's earth was worth more than the rentals provided for in the proposed lease and that he would not be willing to lease the land for the price stipulated if it contained fuller's earth, and that appellant replied that he was not leasing the land for fuller's earth and that the land did not contain any fuller's earth. Said witness further testified that said lease would not have been executed

but for said false representations. There was evidence that the land contained substantial deposits of fuller's earth.

Since the trial was before the court without a jury and judgment was for appellees, we must indulge all reasonable presumptions in appellees' favor. The above evidence, we think, was sufficient to authorize the trial court to infer that appellant knew that the land contained deposits of fuller's earth at the time he represented the contrary to appellees, and that said false representation induced the execution of the lease, and, if so, under the authorities above cited, the trial court properly canceled the lease.

The judgment of the trial court is affirmed.