## C. G. CAPLES AND T. A. McBRIDE, APPELLANTS, *v.* WILLIAM STEEL, RESPONDENT.

CONTRACT—PURCHASER OF LAND NOT REQUIRED TO DISCLOSE HIS KNOWLEDGE OF THE EXISTENCE OF A MINE TO VENDOR.—A person who knows that there is a mine on the land of another, of which fact the

owner is ignorant, may nevertheless buy it without disclosing his knowledge of its existence to the owner, and this will be no fraud on the part of the purchaser.

IDEM—INTENTIONAL MISLEADING OF VENDOR TO HIS INQUIRY, BY VENDEE, WILL AVOID CONTRACT.—If, however, one about to purchase a tract of land willfully mistakes any material fact to the owner, or by any act intentionally misleads him in regard to the value of the land, and through these misrepresentations succeeds in inducing the owner to part with his property for less than its value, a court of equity will relieve him, and set aside the contract thus made as a fraudulent transaction.

APPEAL from Multnomah County. The facts are stated in the opinion.

*Northup & Gilbert,* for appellants:

The plaintiffs are entitled to a decree of specific performance of the contract in this case unless they were guilty of fraud, such as to prohibit the interference of a court of equity in their behalf. Fraud will not be presumed, and the burden of proof to establish fraud lies upon him who alleges it.

"A person who knows that there is a mine in the land of another of which the latter is ignorant may nevertheless buy it without disclosing the existence of the mine." (*Harris* v. *Tyson,* 24 Pa. St., 347.)

" Though the vendor is bound to make known to the purchaser any circumstance lessening the value of the estate, the purchaser is not under a corresponding obligation to communicate any circumstance which may enhance its value; so that, for instance, a man knowing of the existence of a mine under an estate may validly deal with the owner who is ignorant of this fact, without any communication of it." (Fry on Spec. Per., sec 464; *Drake* v. *Collins,* 5 How. Miss. 253.)

Thus it has been held by Lord Thurlow that if A., knowing there is a mine in the land of B. of which he knows B. to be ignorant, should, concealing the fact, enter into a contract to purchase the estate of B. for a price which the estate would be worth without considering the mine, the contract would be good. (*Fox* v. *Mackreth,* 2 Brown Ch. 420; 1 White and Tudor, Leading Cases in Eq. 205.)

To amount to fraud it must be a concealment of those facts and circumstances which one party is under some legal or moral obligation to communicate to the other, and which the other has a legal right to know. (*Van Arsdale* v. *Howard,* 5 Ala. 596; *Barnett* v. *Staunton,* 2 Id. 181; *Laidlow* v. *Organ,* 2 Wheat. 178.)

In an action for specific performance of a contract of sale, if the defendant rely upon a false representation made to him, he must establish in addition, that he will be damaged by performance. (*Morrison* v. *Lods,* 39 Cal. 381; 1 Story's Eq., sec. 203.)

Fraud and damage must be coupled together to entitle an injured party to relief in any court of justice. (1 Story's Eq., sec. 203; *Vernon* v. *Keys,* 12 East, 637, 638.)

The cases cited by respondent where courts of equity have denied specific performance on the ground of fraudulent concealment by the purchaser, are cases where the fraud is clearly established, and where the existence of facts materially affecting the value of the property and their concealment by the purchaser are clearly proven.

*Dolph, Bronaugh, Dolph & Simon,* for respondent:

Specific performance of contracts is not decreed by courts of equity as matter of right in all cases, but the exercise of such jurisdiction rests in the sound discretion of the court considering all the circumstances of each particular case, and will be refused whenever the contract is contaminated by fraud, or the bargain appears to be unconscionable, or the price agreed upon grossly inadequate. The agreement must be certain, fair, and just in all its parts; otherwise this court will not aid in its enforcement, but will leave the parties to their rights and remedies at law. (1 Story's Eq. Jur., sec. 769; 2 Leading Cases in Eq. 665, 667; *Lynch* v. *Bischoff,* 15 Abb. Pr. 357, note; *Seymour* v. *Delancy,* 3 Cowen, 445; *King* v. *Hamilton,* 4 Peters, 311; *Margraf* v. *Muir,* 57 N. Y. 155.)

Although mere silence of the purchaser as to the existence of a material fact affecting the trade, and unknown to the seller, might not be sufficient to induce a court of equity

to cancel or avoid an executed contract, yet it is with great frequency held to be just ground for refusing specific performance of an executory contract. (*Bowman* v. *Bates,* 2 Bibb (Ky.), 51; *Frisby* v. *Ballance,* 4 Scam. 287; *Eastland* v. *Vanarsdel,* 3 Bibb, 274; *Livingston* v. *Peru Iron Co.,* 2 Paige, 390; *Bruck* v. *Tucker,* 42 Cal. 347; *Margraf* v. *Muir,* 57 N. Y. 158.)

The least positive assertion or conduct on the part of the purchaser which is designed or calculated to conceal or misrepresent the truth, will be sufficient to defeat this claim to have the contract fulfilled. (*Livingston* v. *Peru Iron Co.,* 2 Paige, 390; *Bradley* v. *Bosley,* 1 Barb. 125; *Bruck* v. *Tucker,* 42 Cal. 347.)

By the Court, KELLY, C. J.:

The respondent, William Steel, on the twenty-seventh day of July, 1875, sold to the appellants, C. G. Caples and T. A. McBride, a tract of land in Columbia county, containing one hundred and sixty acres, for three hundred and twenty dollars—twenty dollars being paid in cash, and two promissory notes given for the balance. At the same time an obligation was given by Steel to Caples and McBride to convey the land by deed to them upon the payment of the notes. The first note was paid at maturity, and the second one deposited in the First National Bank of Portland for payment, having been made payable to the order of the cashier of the bank. When it became due it was also paid to the cashier for the respondent, who declined to receive the money.

The respondent alleges in his answer that after the payment of the first note, and before the second became due, he was informed of the existence of a coal mine under the soil of the land in controversy, and that appellants knew before they bargained for it the fact that there was a valuable coal mine on the land. He further alleges that the appellants conspired together to defraud him by concealing this knowledge when they were under obligations to make it known before they purchased the land. The respondent notified appellants that he would not complete the contract,

and tendered them back the money they had paid him, with interest, and also the second note, which they refused to receive. This suit was then brought to enforce the specific performance of the contract. The burden of proof rests upon the respondent to establish two propositions:

1. That there is a coal mine on the land in controversy;

2. That the appellants perpetrated a fraud upon him in making the purchase.

The testimony is quite voluminous, and much of it irrelevant to the matters in issue, but taking it all together we think the respondent has failed to show that there is any vein or ledge of coal upon the land in question, or even upon the adjacent tracts. Small seams have been discovered within a short distance of the land in controversy, but no vein of any value has been satisfactorily proven to exist either on this or the adjoining tracts, and any increased value which may have been added to the land since the purchase by appellants is purely speculation, and arises altogether from the mere possibility that coal may hereafter be discovered upon it in quantity and quality sufficient to make the mining of it profitable. It is a matter of vague conjecture whether the respondent has or has not suffered any loss on account of the sale to appellants, and courts of equity will not any more than courts of law relieve a party from even a fraudulent act which is followed by no loss or damage. (1 Story's Eq. Jur. 203.)

We think the evidence equally fails to show that the sale of the land to appellants was procured through any fraudulent act on the part of either of them towards the respondent.

A person who knows that there is a mine on the land of another, of which fact the owner is ignorant, may nevertheless buy it without disclosing his knowledge of its existence to the owner, and this will be no fraud on the part of the purchaser. (*Fox* v. *McReth*, 2 Bro. C. C. 400; Fry on Spec. Perf., sec. 464; *Harris* v. *Tysen*, 24 Pa. St. 347.) Where, however, one about to purchase a tract of land, willfully misstates any material fact to the owner, or by any act intentionally misleads him in regard to the value of the land, and through these misrepresentations succeeds in inducing

the owner to part with his property for less than its value, a court of equity will relieve him, and set aside the contract thus made as a fraudulent transaction.

Tested by the principles here laid down, we are at a loss to perceive wherein the respondent was misled or deceived by any word or act of either of the appellants, or that they acted otherwise than fair in regard to the whole transaction. As stated by himself in his testimony, the respondent was unacquainted with the land, and went to the residence of Dr. Caples, one of the appellants, and told him that he wanted him, Caples, to· take him there, and show him the land. This was done in accordance with the request. The timber and the lay of the land were shown so far as it could conveniently be done. And respondent says that Dr. Caples represented the timber and the quality of the soil as really better than he afterwards found them. This is all he inquired about, or concerning which he expressed a wish for information in regard to the land. If he had inquired of Dr. Caples whether there were any indications of a coal mine on or near the premises, then it would undoubtedly have been his duty to answer truly or remain silent. But no such question was asked, no such information was sought, and therefore no deception was practiced by Caples in ·saying nothing about the efforts which had been made to discover coal on the adjoining tracts of land. Nor was he under any obligation to take respondent to the several places where shafts had been sunk or tunnels run into the ground in prospecting for veins of coal. The principle is well settled in equity jurisprudence, as we have already stated, that a person who knows that there is a mine on the land of another, of which the owner is ignorant, can lawfully and safely buy it without informing the owner of the existence of the mine. A· purchaser is not bound by our laws to make the man he buys from as wise as himself.

The case of *Bowman* v. *Bates*, 2 Bibb, 47, has been referred to by counsel for respondent as analogous to the one under consideration. We do not so regard it. There the purchaser, who had discovered a salt spring on a tract of land in Kentucky, by artifice prevented the agent of the

vendor, who was aware of the fact, from giving that information to his principal, and then sent his brother to Virginia, where the vendor resided, and bought the land at much less than its actual value. It was the deception practiced upon the vendor and the misrepresentations made to him that constituted the fraud for which the deed was very properly set aside.

The decree of the court below is reversed, and it is now ordered and decreed that the respondent execute and deliver to the appellants a deed for the premises described in the complaint within three months from the date of this decree.