[L. A. No. 17462. In Bank. Aug. 12, 1941.]

NETTIE L. SEEGER et al., Appellants, v. A. J. ODELL et al., Respondents.

410

Daniel A. Knapp and Fred A. Wilbur for Appellants.

Louis N. Whealton, Wm. H. Neblett, B. H. Neblett and E. Walter Guthrie for Respondents.

TRAYNOR, Plaintiffs have appealed from a judgment on the pleadings in favor of defendants A. J. Odell, Mary Gibbs, William G. McAdoo and R. T. Colter. The allegations of the complaint must therefore be considered true as though the complaint were before the court upon a general demurrer. (*Miller* v. *Price,* 103 Cal. App. 650, 654 [284 Pac. 1035].)

 The complaint alleges: The plaintiffs, an elderly couple, were the owners of a lot located in Huntington Beach, California. In 1926 they executed a note and mortgage on this lot to William G. McAdoo and R. T. Colter as security for the payment of a loan of $2255. McAdoo and Colter assigned the note and mortgage to Mary Gibbs who in 1933 secured a final judgment of foreclosure. Shortly thereafter, . A. J. Odell and Mary Gibbs requested the plaintiffs to confer with them on the disposition of the property. At the conference McAdoo, Colter, Gibbs and Odell were represented by their attorney, Ben H. Neblett. Neblett told plaintiffs that as an attorney he had superior knowledge of many facts concerning the land and that they could rely upon all he had to say. McAdoo and Colter had previously secured a money judgment against plaintiffs in another action, and Neblett stated that, acting on behalf of Colter and McAdoo, he had secured an execution on plaintiffs' land to satisfy the judgment, that the sheriff had levied on the land and sold it to McAdoo and Colter for the amount of the judgment debt, and that McAdoo and Colter were the owners of any

interest which plaintiffs previously had in the land. McAdoo and Colter, he represented, were going to submit to the foreclosure sale, which had been set for August, 1933, and would not exercise their equity of redemption. Neblett went on to assure the plaintiffs, however, that he and his clients were plaintiffs' friends and would make an unselfish proposal solely to enable the plaintiffs to receive some return from the land out of which they would otherwise get nothing. The proposal was that plaintiffs join with Mary Gibbs in a lease of the land to Odell for the purpose of drilling for oil, with the understanding that they would receive a specific royalty from the oil produced.

The complaint further alleges: The plaintiffs believed Neblett's representation that their land had been sold at an execution sale to Colter and McAdoo. They therefore joined in executing a lease to Odell and made no attempt to pay the mortgage debt or to exercise the equity of redemption after the foreclosure sale although during this period many persons offered to lease the land from them with advances sufficient to cover the mortgage indebtedness. After Mary Gibbs bought in the property at the foreclosure sale in August, 1933, Odell took possession under his lease and drilled a well from which he has received profits of more than $100,000.

The complaint alleges further: No execution actually had been levied on the land. The representation that the land had been sold to McAdoo and Colter was known to be false by Neblett and his clients. It was made to induce the plaintiffs to refrain from paying the mortgage indebtedness or from exercising their equity of redemption and to induce them to join in leasing the property to Odell. Plaintiffs did not discover the falsity of the representations until May, 1936. The records covering the facts involved were situated in a city at some distance from the city where plaintiffs reside. They are both elderly; neither drives an automobile, and they had no reason to suspect that the representations were false. Following the discovery of the misrepresentation, plaintiffs notified Odell of their rescission of the lease. They then brought this action against Odell, McAdoo, Colter, and Gibbs asking that the foreclosure sale to Mary Gibbs be set aside, that the title to the property be quieted in them except as to existent subleases in the hands of innocent sublessees,

and that a judgment be awarded them for all moneys received as royalties by Mary Gibbs or her assigns from the oil well and for all moneys received by Odell from the oil well. Plaintiffs offer to do all things required of them by the court including the paying of the mortgage indebtedness on the property. The oil companies were made nominal defendants solely to have their rights, if any, adjudicated.

■ It is well established in California and other jurisdictions that a person who has been induced by fraudulent misrepresentations to enter into a contract or to make a conveyance may have the contract or conveyance set aside and secure a restitution of those benefits lost to him by the transaction. (Cal. Civ. Code, sec. 1689 (1); see cases cited in 12 Cal. Jur. 781, 782; 6 Cal. Jur. Supp. 54; Cal. Annotations to Rest. Restitution, sec. 28. See Rest. Restitution, sec. 28.) ■ A fraudulent misrepresentation is one made with the knowledge that it is or may be untrue, and with the intention that the person to whom it is made act in reliance thereon. (Rest. Torts, secs. 526, 531; Cal. Civ. Code, secs. 1572, 1710; see cases cited in 12 Cal. Jur. 706–709. ■ It must appear, however, not only that the plaintiff acted in reliance on the misrepresentation but that he was justified in his reliance. (Rest. Torts, sec. 537; see cases cited in 12 Cal. Jur. 750 et seq.) ■ He may not justifiably rely upon mere statements of opinion, including legal conclusions drawn from a true state of facts (Rest. Torts, sec. 545; see cases cited in 12 Cal. Jur. 730–733, unless the person expressing the opinion purports to have expert knowledge concerning the matter or occupies a position of confidence and trust. (Rest. Torts, sec. 542; see cases cited in 12 Cal. Jur. 725 et seq.) If, however, the opinion or legal conclusion misrepresents the facts upon which it is based or implies the existence of facts which are nonexistent, it constitutes an actionable misrepresentation. (Rest. Torts, sec. 539; see cases cited in 12 Cal. Jur. 727, 728.) ■ Negligence on the part of the plaintiff in failing to discover the falsity of a statement is no defense when the misrepresentation was intentional rather than negligent. (See cases cited in 12 Cal. Jur. 758, 759; Prosser, Torts, 748.) ■ As a general rule negligence of the plaintiff is no defense to an intentional tort. (See Prosser, Torts, 402.) ■■ The fact that an investigation would have revealed the falsity of the misrepresentation will

not alone bar his recovery (Rest. Torts, sec. 540; see cases cited in 12 Cal. Jur. 758, 759), and it is well established that he is not held to constructive notice of a public record which would reveal the true facts. (Rest. Torts, sec. 540 (b); see cases cited in 12 Cal. Jur. 759, 764; Prosser, Torts, 750, 751.) The purpose of the recording acts is to afford protection not to those who make fraudulent misrepresentations but to *bona fide* purchasers for value. ▮ Nor is a plaintiff held to the standard of precaution or of minimum knowledge of a hypothetical, reasonable man. Exceptionally gullible or ignorant people have been permitted to recover from defendants who took advantage of them in circumstances where persons of normal intelligence would not have been misled. (See cases cited in 6 Cal. Jur. Supp. 45 (note 13); Prosser, Torts, 749.) "No rogue should enjoy his ill-gotten plunder for the simple reason that his victim is by chance a fool." (*Chamberlin* v. *Fuller*, 59 Vt. 247 [9 Atl. 832, 835].) If the conduct of the plaintiff in the light of his own intelligence and information was manifestly unreasonable, however, he will be denied a recovery. (Rest. Torts, sec. 541; see cases cited in 12 Cal. Jur. 757; Prosser, Torts, 747, 748.) "He may not put faith in representations which are preposterous, or which are shown by facts within his observation to be so patently and obviously false that he must have closed his eyes to avoid discovery of the truth. . . . " (Prosser, Torts, 749.)

▮ In the present case the allegations of the plaintiffs' complaint, if true, are sufficient to establish the right to relief on the basis of a fraudulent misrepresentation. According to these allegations the misrepresentation was made by the defendants through their agent (see cases cited in 12 Cal. Jur. 774; 6 Cal. Jur. Supp. 51) with the knowledge that it was false and with the intention of inducing plaintiffs to act in reliance upon it, and plaintiffs did act in reliance thereon. The fact that an examination of the record would have revealed to plaintiffs the falsity of the representation or that they may have been negligent in failing to make further investigations does not bar their right to relief. The misrepresentation is not such that its falsity must have been so obvious to the plaintiffs as to preclude any justifiable reliance thereon by them. The defendants cannot urge as a defense that plaintiffs were more credulous than the average

person. ▮▮▮ The representation that a levy of execution and sale of the property had occurred was a false statement of fact and is not rendered less actionable because it also contained legal conclusions.

▮▮▮ Defendants contend that under the case of *Robins* v. *Hope,* 57 Cal. 493, an owner of property in California is "conclusively presumed" to know the state of his own title and therefore may not justifiably rely upon misrepresentations as to ownership. Since a "conclusive presumption" is simply a statement of the rule of law applicable in a given situation, defendants are contending for the establishment of a rule that no action will lie for a fraudulent misrepresentation when it concerns the title to property owned by the party misled. Such a rule would give legal sanction to the perpetration of fraud and permit the cunning to take unfair advantage of the ignorant. The average property owner knows nothing more about the state of his own title than that it is presumably in himself. He usually purchases his property in reliance upon a policy of title insurance and does not search the record for possible adverse claims. While situations might arise where the owner of property would not be justified in relying upon a misrepresentation as to its title, the circumstances of each case should determine whether or not justification exists as in any other action based upon fraud. The defense should not be conclusively presumed against the owner without giving him a chance to show justifiable reliance. Numerous cases in other jurisdictions have permitted a vendor of realty to rescind a contract of sale because the vendee had fraudulently misrepresented to the vendor the value, quantity, or state of the title of the land being conveyed. No attempt is made to presume, conclusively or otherwise, knowledge by the ignorant vendor of the facts concerning his own land. (*Holt* v. *Gordon,* (Tex. Civ. App.) 176 S. W. 902; *Livingston* v. *Peru Iron Co.,* (N. Y.) 2 Paige, 390; *Caples* v. *Steel,* 7 Ore. 491; *Crompton* v. *Beedle,* 83 Vt. 287 [75 Atl. 331, Ann. Cas. 1912A, 399, 30 L. R. A. (N. S.) 748]; *Burrows* v. *Fitch,* 62 W. Va. 116 [57 S. E. 283]; *Wilson* v. *Nichols,* 72 Conn. 173 [43 Atl. 1052]; *Faxon* v. *Baldwin,* 136 Iowa 519 [114 N. W. 40]. See 9 A. L. R. 1062; 30 L. R. A. (N. S.) 753.) In the California case of *Conlan* v. *Sullivan,* 110 Cal. 624 [42 Pac. 1081], a vendee purchased land from a vendor for far less than its value by concealing

from the vendor the fact that a mortgage with which the vendor believed the land to be encumbered actually applied to another piece of land. This court held that the fraudulent conduct of the vendee justified the trial court in rescinding the contract of sale on behalf of the vendor. There was no conclusive presumption against the vendor that he knew the state of the title to his land. In the recent case of *Glickman* v. *New York Life Insurance Co.*, 16 Cal. (2d) 626 [107 Pac. (2d) 252, 131 A. L. R. 1292], this court held that the holder of an insurance policy was not so chargeable with notice of the terms of his policy as to be precluded from rescinding a surrender of the policy when he was misled by fraudulent statements as to his rights made by the insurer's agent. The same considerations that prompted the court to refuse to hold the policyholder to a knowledge of the terms of his policy apply against conclusively presuming knowledge of the state of his title on the part of the owner of realty. The case of *Robins* v. *Hope* is therefore overruled to the extent that it holds that an owner of realty is conclusively presumed to know the state of the title to his land.

■ Because of the alleged fraudulent misrepresentation plaintiffs ask for a setting aside of the foreclosure sale to Mary Gibbs and a rescission of the lease to Odell with an accounting of the profits received by these defendants from the property. Since the action is one for equitable relief rather than for damages at law, it is sufficient for the plaintiffs to allege that they have been wrongfully deprived of certain property by the misrepresentation and they need not set forth in detail the extent to which they have been damaged. (See cases cited in 12 Cal. Jur. 813, 814.) ■ As a condition of restitution, however, the plaintiffs must restore to the defendants any benefits that they have received as a result of the transaction. (Rest. Restitution, sec. 65; Civ. Code, sec. 1691 (2); see cases cited in Cal. Annotations to Rest. Restitution, sec. 65; 12 Cal. Jur. 781.) Plaintiffs must therefore pay to Mary Gibbs the amount of the mortgage debt before they can recover the property. A restoration of the royalties received by plaintiffs is not necessary since they need not restore property which is rightfully theirs. (See Rest. Restitution, sec. 65, and Cal. Annotations.) ■ Defendants contend that plaintiffs have not properly offered to make the necessary restitution. It is well established, how-

ever, that a court granting equitable relief has the power to make its decrees contingent upon compliance by the plaintiff with certain conditions. (See cases cited in 10 Cal. Jur. 508–511, 512.) The interests of the defendants can thus be well protected by a decree making any relief granted to plaintiffs conditional upon their paying the mortgage debt. Plaintiffs' offer in their complaint to ''do and perform all things of them in equity required by the court to be done by them in the premises'' and to subtract the amount of the mortgage debt from any sum awarded them from Mary Gibbs is a sufficient offer of restitution.

 Defendants finally contend that plaintiffs are barred from a recovery by the statute of limitations and laches. In California the statute of limitations in an action based upon fraud begins to run from the time when the fraud was discovered or should reasonably have been discovered. (Code Civ. Proc., sec. 338 (4).) It is necessary for a plaintiff to allege facts showing that suit was brought within a reasonable time after discovery of the fraud without unnecessary delay and that failure to make the discovery sooner was not due to negligence. (See cases cited in 12 Cal. Jur. 795–799.) The present action was brought more than three years after the date when the misrepresentation was allegedly made but only sixty days after it was discovered. Plaintiffs allege that the discovery did not occur sooner because of their advanced age, the considerable distance of the available records from their home, and the absence of any occasion on their part to examine the records or otherwise inquire into the truth of the representation. The alleged facts, if believed, would justify a trial court in finding that the plaintiffs were sufficiently diligent in discovering the fraud and that the action was brought within a reasonable time thereafter.

The judgment is reversed.

Gibson, C. J., Shenk, J., Curtis, J., Edmonds, J., Houser, J., and Carter, J., concurred.