[Civ. No. 8815.   Third Dist.   Oct. 30, 1956.]

EDWARD C. BLACK, JR., et al., Respondents, v. J. N. BLAIR AND COMPANY (a Corporation) et al., Appellants.

Dwyer & King and W. P. Dwyer, Jr., for Appellants.

Wilke, Fleury & Sapunor and Sherman C. Wilke for Respondents.

PEEK, J.—This is an appeal by defendants from an adverse judgment in an action brought by plaintiffs to rescind a contract of sale of personal property, a lease of real property,

and to recover the detriment suffered by reason of the false and fraudulent representations made by defendants.

The record discloses that pursuant to a letter from plaintiffs seeking information pertaining to the ice cream business, the defendant Wilde, a salesman for the defendant corporation, replied in part as follows:

"· · · · · · · · · ·

"This means that we put you in the ICECREAM BUSINESS . . .

We help you select the location you desire.

We either build or arrange the lease of the bldg.

We install the equip*t*ment and open your store for you.

And arrange the financing for a low downpayment and very easy terms.

"All that is needed is for both of us to decide on a location, receive the nod of approval from you and we do the rest. When you step out of the service you will step into a going business and we stay with you until you are completely confident you are ready and able to conduct the business yourself.

[Following paragraph typed in red letters.]

"SPECIAL NOTE:

1. You are in business for yourself.

2. You pay no royalty or franchise.

3. Every dollar you take in is yours.

4. You buy your supplies from whomever you wish.

a. We suggest but these suggestions are not mandatory.

"PROFITS: [The words "30¢ NET" also typed in red letters.]

FOR EVERY DOLLAR YOU TAKE IN 30¢ NET IS YOURS.

OPERATORS HAVE PROVEN THIS AND ARE PROVING THIS FACT DAILY.

YOU CAN INTERVIEW THESE OPERATORS YOURSELF WITHOUT OUR PRESENCE . .

"This letter is FORCEFUL we admit but the facts themselves hold up and give us the confidence to make these statements.

· · · · · · · · ·"

Several meetings were held between the plaintiffs and Wilde. At all times Wilde held himself out as an expert in regard to the ice cream business. Specifically he referred to an extensive trip which he had recently taken throughout the Northwest and into Canada in company with another expert, during which he studied the operations of 40 or 50 ice cream establishments. However, at the trial it developed

that he had been gone from Sacramento for a total of only five days. It was further shown that his extensive experience in the installation of retail ice cream stores consisted in the establishment of one store. In addition to the letter previously set forth, Wilde also gave to plaintiffs a written memorandum wherein he showed them by his figures what their total expenses would be; that in the summer months most stores averaged $125 per day; that during the winter months sales would average $65 to $80 daily; but that on a basis of only $50 per day, they would have a monthly profit of approximately $600. Neither of the plaintiffs had any previous business experience. This fact was mentioned to Wilde and he was informed by them that they were therefore compelled to rely upon his judgment in all matters. At that time Black was 24 years of age, having gone directly from high school into the Air Force. Mrs. Black was 21. The negotiations were begun prior to Black's separation from the service in order that they might immediately go into a small business for themselves. The location selected was in a building owned by the defendants Newell R. Blair and his wife, Dorothy A. Blair. In the latter part of July, 1952, following certain renovations, the establishment was opened for business. To accomplish this it was necessary for plaintiffs to execute a lease of the premises with the Blairs, a contract for the purchase of equipment in the amount of $9,583.74, and an F.H.A. note in the sum of $1,516.58 for the remodeling of the premises. In the early part of November, 1952, plaintiffs realized that the business was not earning what they had been led to expect by Wilde, and on the 13th of that month they gave their notice of rescission.

Upon the evidence so presented, the court found that defendants, to induce plaintiffs to enter into said contract, lease and note, falsely and fraudulently made the statements heretofore summarized, knowing the same to be false, and that plaintiffs, believing the same to be true, relied thereon. Specifically the court found that such false and fraudulent representations were that if plaintiffs would purchase the ice cream freezing equipment specified and enter into said lease, they would earn from said business an average gross income of $1,500 monthly from daily sales of $50; thus earning an average monthly profit of $633.84; and that from every dollar taken in by plaintiffs from the sale of ice cream, they would realize a net profit of 30 cents.

Defendants first contend that there was no justifiable reli-

ance by plaintiffs in that the defendant Wilde was at most only negligent in not more fully explaining his memorandum to plaintiffs, or in not being sure that they fully understood it, and that plaintiffs were likewise negligent in relying on such absurd representations; secondly, that Wilde's statement that out of every dollar taken in, 30 cents would be theirs, was so completely inconsistent with his statement as to the specific net profits plaintiffs would receive from sales of $50 per day as to have put plaintiffs on inquiry; and, thirdly, that in any event plaintiffs failed to use due diligence in rescinding after discovery of the alleged misrepresentations.

In support of this contention, defendants argue that the alleged misrepresentations contained in Wilde's memorandum are entirely inconsistent with the statements contained in his letter, i. e., that plaintiffs would make a net profit of 30 cents out of each dollar taken in; that he did not intend to make any particular representations by the memorandum which he gave to plaintiffs; and that they by "their unbelievable ignorance" were confused as to what he meant. It is then argued that since what was set forth in his memorandum and what Wilde actually meant, was entirely different from what plaintiffs construed it to mean, at most he could only have been negligent in failing to explain more fully his meaning and in failing to be sure it was understood by plaintiffs, and that because the statements were so "absurd" plaintiffs were likewise negligent in relying on them.

It would appear, however, that any variance between the actual figures as to net profit set forth in Wilde's memorandum and the 30-cent figure set forth in his original letter would be immaterial since the contents of both are admitted. It would further seem that any improper items of expense reflected by plaintiffs' books would likewise be immaterial since the items so charged did not exceed the items of expense set out by Wilde in his memorandum. ■ The ultimate question presented, being one of fact, comes squarely within the rule of *Seeger* v. *O'Dell*, 18 Cal.2d 409 [115 P.2d 977, 136 A.L.R. 1291], and the rule therein enunciated must control.

Paraphrasing the holding of the court in that case, the record before us amply sustains the findings of the trial court herein that the misrepresentations were made with the knowledge that they were or might be untrue; that plaintiffs were justified in acting in reliance thereon; that if it could be said that Wilde's statements were mere expressions of opinion, nevertheless such statements were made by one who held him-

self out as an expert in the field; that such facts were intentionally misrepresented and therefore the negligence, if it was such, on the part of plaintiffs was no excuse for Wilde's actions. ▮ Even assuming as defendants contend that the plaintiffs exhibited "unbelievable ignorance" or that Wilde's statements were "absurd" it is still the rule that,

"Exceptionally gullible or ignorant people have been permitted to recover from defendants who took advantage of them in circumstances where persons of normal intelligence would not have been misled. (See cases cited in 6 Cal.Jur. Supp. 45 (note 13); Prosser, Torts, 749.) 'No rogue should enjoy his ill-gotten plunder for the simple reason that his victim is by chance a fool.'" (*Seeger* v. *O'Dell, supra,* 18 Cal.2d 409, 415.)

▮ Defendants' final contention is likewise without merit. We cannot say as a matter of law that plaintiffs unduly delayed their notice of rescission by their operation of the business for nearly four months. They commenced business on July 21 and gave notice on November 14. As defendants note in their brief, it would take some time for a new business to get started and prove itself. Plaintiffs could not tell what their true financial situation was until at least some of their original operating expenses began to catch up with them, and they were then able to more properly compare their costs with their sales. Under such facts and circumstances it cannot be said that plaintiffs failed to act promptly upon the discovery of the facts entitling them to rescission within the meaning of Civil Code, section 1691.

The judgment is affirmed.

Schottky, J., and McMurray, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.