[Civ. No. 32172. Second Dist., Div. One. Nov. 4, 1968.]

HENRY J. HARAZIM et al., Plaintiffs and Appellants, v. GEORGE LYNAM et al., Defendants and Respondents.

A. P. Coviello and Arthur Shivell for Plaintiffs and Appellants.

Louis A. Audet and Les J. Hartley for Defendants and Respondents.

FOURT, J.—Plaintiffs Henry J. and Zae H. Harazim, husband and wife, and Dorothy R. Duncan appeal from judgments of dismissal entered in these consolidated actions after general demurrers were sustained without leave to amend as to defendants Warren F. McLaren Applegate and George Lynam.

Appellants originally filed separate complaints based on essentially similar facts against all of the same defendants. These cases, which arose out of similar transactions, were consolidated for trial. The motions of defendants Applegate and Lynam for judgments on the pleadings were treated by the court as demurrers and denied with leave to amend. Plaintiffs thereafter several times amended their pleadings and each time general and/or special demurrers thereto were sustained. Finally, the court sustained general and special demurrers to the fourth amended complaints without leave to amend and entered its judgments dismissing the actions as to Applegate and Lynam. Plaintiffs have appealed from these judgments.

The fourth amended complaint in the Harazim action alleges generally the mutual agency and conspiracy of the defendants and further alleges that defendants devised a scheme for selling to the public interests in a ''pretended investment business, partnership enterprise, and joint venture termed by them science of money course'' with the intention of converting to their own use and benefit monies thus obtained from plaintiffs and the public ''and forever depriving plaintiffs thereof.'' The Harazims' complaint alleges further that they paid to defendants specified sums ''as and for such interests in said pretended science of money course'' relying on certain representations made by defendants which were false and were known by defendants to be false when made, and which defendants made without having any intention of conducting any business but with the intention instead of misrepresenting ''in pursuance of the said plan and scheme, and all for the purpose of mulcting the plaintiffs and of converting all of said monies to their own use and benefit.'' Later, the complaint alleges, the defendants, acting through Joseph R. Brauner, delivered to the Harazims a sham promissory note made on a printed form prepared for notes payable to the Bank of America. Finally the complaint alleges that the plaintiffs were damaged in the sum of $10,000 and requests punitive damages for fraud. In a second count the complaint sets forth an action for money had and received. The two counts of the complaint filed by Dorothy R. Duncan are essen-

tially the same except that she allegedly paid defendants $5,000.

Despite certain ambiguities in the allegations of ultimate fact, we clearly perceive the cause of action which appellants have inexpertly stated. Appellants in essence claim that they were induced by defendants' misrepresentations, made to them pursuant to defendants' conspiracy to defraud appellants and other members of the public, to pay to defendants specified sums of money to purchase interests in an enterprise established by defendants and known by them to be merely a sham or pretended business. As a result of their reliance upon defendants' false representations, appellants received nothing for their money except a fraudulent promissory note. It is evident from the complaint that the apparent weakness of the pleading is due in part to appellants' confusion as to terminology deliberately utilized by defendants. Defendants allegedly referred to the purported business interests they were selling as ''memberships,'' ''contributing associates,'' ''pure trust indentures,'' ''certificates'' and ''shares'' at various times.

''The elements of fraud, which give rise to the tort action for deceit, are (1) misrepresentation . . . ; (2) knowledge of falsity . . . ; (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage.'' (2 Witkin, Summary of California Law 1372; *Seeger* v. *Odell,* 18 Cal.2d 409 [115 P.2d 977, 136 A.L.R. 1291].) As appellants point out in their opening brief, in which they once again request the opportunity to amend and clarify their pleadings if found defective, the basic misrepresentation made by defendants was that when appellants paid to defendants the sums of money solicited they were purchasing interests in an existing, legitimate enterprise. In truth and in fact, this representation was false and was known by defendants to be false, because the sole purpose of their enterprise was to establish a shell or conduit to obtain funds to be converted exclusively to their own use and benefit. The basic elements of a cause of action for fraudulent misrepresentation are present in the complaint, and there can be little doubt that such a scheme perpetrated on innocent members of the public constitutes actionable fraud.

Respondents contend that the misrepresentations relied upon by appellants in their complaint constitute promises of future profits and statements of legal opinions made by laymen, neither of which constitutes sufficient basis for a fraud

action. If these complaints exhibit a genuine frailty, it does indeed lie in the allegations of specific misrepresentations made by defendants which are set forth in paragraph V. Paragraph V of each complaint alleges that defendants made the following misrepresentations: that a "contributing associate" (a term designating the purchaser of an interest by reference to paragraph III of the complaint) creating a trust under defendants' trust plan could continue to manage and enjoy the assets which would be free from liability for his personal debts and from probate costs and death taxes at the purchaser's death; that the trust indenture "offered for sale" was copyrighted by defendants; that the state could not regulate the trust defendants offered; that defendants had created such a trust for the family of John F. Kennedy, formerly president of the United States; that attorneys and banks would, if consulted, pretend to be ignorant or would conceal their knowledge of the validity of such trusts; and that income accruing to the trust would not be taxable to the trust entity. That paragraph further alleges that appellants paid money to defendants in reliance upon the foregoing representations.

Standing alone, these allegations would not be sufficient to constitute actionable misrepresentations. The representations relied upon must ordinarily be affirmations of fact (Civ. Code, § 1710); misrepresentations of law or legal opinions expressed by laymen are insufficient (*Haviland* v. *Southern Cal. Edison Co.*, 172 Cal. 601, 608 [158 P. 328]; *Agnew* v. *Foell*, 113 Cal.App.2d 575, 577 [248 P.2d 758]), as are the opinions that future profits will be realized on investments, as implied by other paragraphs in the subject complaint. (*Gleason* v. *McPherson*, 175 Cal. 594, 597-598 [166 P. 332]; *Jefferson* v. *Hewitt*, 95 Cal. 535, 538 [30 P. 772]; *Lathrop* v. *National Sugar Co.*, 16 Cal.App. 350, 353 [116 P. 982].)

By contrast to these general rules, misrepresentations of opinion are actionable when the declarant holds himself out to be specially qualified. "Thus when one of the parties possesses, or assumes to possess, superior knowledge or special information regarding the subject matter of the representation, and the other party is so situated that he may reasonably rely upon such supposed superior knowledge or special information, a representation made by the party possessing or assuming to possess such knowledge or information, though it might be regarded as but the expression of an opinion if made by any other person, is not excused if it be false." (*Haserot* v. *Keller*, 67 Cal.App. 659, 670-671 [228 P. 383].)

■ Appellants' opening brief clarifies the significance of the specific misrepresentations alleged in paragraph V of their complaints. Appellants therein point out that during 1961 and 1962 respondents and defendant Brauner by written advertising in newspapers, hand bills and prospectuses, solicited enrollments in and conducted what they called the "Science of Money Course." Those members of the public who answered newspaper advertisements received additional advertising literature and many ultimately enrolled for a fee in the purported course. The named defendants gave lectures in the course in which they held themselves out as experts on money management and as authorities on investments of various kinds and the legal consequences thereof. In this guise they solicited funds from members of the public who attended the course. Appellants were enticed by the advertising to attend a meeting or meetings of the course and were persuaded by defendants' oral and written representations, including those set forth in paragraph V and others made in defendants' advertising literature, to pay funds to defendants for the acquisition of interests in the venture. Later defendants falsely represented to appellants that their funds had been invested, that profits had been received, and that these profits were being reinvested for them. In fact, Applegate and Lynam and defendant Brauner converted the payments made to them by appellants to their own use and did not invest the funds for appellants' benefit as promised and did not obtain profits of any kind for appellants.

If the circumstances are, indeed, those set forth in appellants' brief, then the defendants set themselves forth as persons occupying positions of superior knowledge and as experts whose opinions may be relied upon and treated as representations of fact constituting actionable fraud. ■ "'Wherever a party states a matter which might otherwise be only an opinion, and does not state it as the mere expression of his own opinion, but affirms it as an existing fact material to the transaction, so that the other party may reasonably treat it as a fact and rely and act upon it as such, then the statement clearly becomes an affirmation of fact within the meaning of the general rule, and may be a fraudulent misrepresentation.'" (*Crandall* v. *Parks*, 152 Cal. 772, 776 [93 P. 1018].) ■ "A fraudulent misrepresentation is one made with the knowledge that it is or may be untrue, and with the intention that the person to whom it is made act in reliance thereon. [Citations.] It must appear, however, not only that the plaintiff acted in reliance on the

misrepresentation but that he was justified in his reliance. [Citations.] He may not justifiably rely upon mere statements of opinion, including legal conclusions drawn from a true state of facts [citations], unless the person expressing the opinion purports to have expert knowledge concerning the matter or occupies a position of confidence and trust. [Citations.] If, however, the opinion or legal conclusion misrepresents the facts upon which it is based or implies the existence of facts which are nonexistent, it constitutes an actionable misrepresentation." (*Seeger* v. *Odell, supra,* 18 Cal.2d 409, 414.) ▇ It is clear, therefore, that if appellants can amend their pleadings to allege that respondents held themselves out as experts or persons with superior knowledge whose statements were made as material facts, and that appellants relied upon this expertise and knowledge, the specific misrepresentations alleged in paragraph V of the complaint constitute a sound basis for a cause of action in fraud. "Nor is a plaintiff held to the standard of precaution or of minimum knowledge of a hypothetical, reasonable man. Exceptionally gullible or ignorant people have been permitted to recover from defendants who took advantage of them in circumstances where persons of normal intelligence would not have been misled." (*Seeger* v. *Odell, supra,* 18 Cal.2d 409, 415.)

Appellants may, in addition, desire to clarify their pleadings to allege that respondents took money from appellants with the promise that it would be invested in some specified manner, but that this was not done because at the time they made the statements respondents had no intention to perform. ▇ A promise to do something necessarily implies the intention to perform, and, where such intention is absent, there is an implied misrepresentation of fact, which is actionable fraud. (Civ. Code, § 1710, subd. 4; *Valdez* v. *Taylor Automobile Co.,* 129 Cal.App.2d 810 [278 P.2d 91].) ▇ "Where, in bad faith and without intent to perform, one makes a promise touching a substantive part of the consideration moving to the party with whom he is dealing, it constitutes fraud." (*Grant* v. *U. S. Electronics Corp.,* 125 Cal.App. 2d 193, 199 [270 P.2d 64].)

▇ These additional grounds for a cause of action in fraud are implied from the pleadings and stated in appellants' opening brief. Appellants are entitled to a reasonable opportunity to amend and clarify their pleadings in the respects pointed out above, pursuant to their request. (*Wen-*

134

*nerholm* v. *Stanford University School of Medicine,* 20 Cal.2d 713, 719 [128 P.2d 522, 141 A.L.R. 1358].)

 Pleadings and amendments thereto should be allowed and construed liberally with the object of affording every litigant his day in court and to render substantial justice between the parties. (*Speegle* v. *Board of Fire Underwriters,* 29 Cal.2d 34, 42 [172 P.2d 867].) The court should not sustain a demurrer without leave to amend if the complaint states or can be made to state a cause of action on any proper legal theory. (*Kauffman* v. *Bobo & Wood,* 99 Cal.App.2d 322, 323 [221 P.2d 750].) We find that the general demurrer was improperly sustained without leave to amend because the complaints as they stand state a cause of action in fraud based in each instance upon the false representations made by defendants that they were conducting a valid, legitimate business and inducing appellants to pay them sums of money to purchase an interest or interests therein. ''Where a complaint is sufficient against a general demurrer, however, and any uncertainties or ambiguities in the pleading can be corrected by amendment, it is apparent that denial of leave to amend results in a disposition of the cause upon technical grounds alone. The plaintiff who has stated a cause of action in such a case is denied a trial on the merits of his action if any of the grounds of special demurrer is well taken, despite the fact that the deficiencies can be corrected. It has been held, under such circumstances, that denial of leave to amend constitutes an abuse of discretion even though it be conceded that the trial court had authority to sustain the special demurrer because of defects in the form of the pleading. [Citations.]'' (*Wennerholm* v. *Stanford University School of Medicine, supra,* 20 Cal.2d 713, 718-719.) Clearly appellants should have, if they desire, the opportunity to cure ambiguities and uncertainties by incorporating in their pleadings the facts set forth in their brief in order to utilize the specific allegations of paragraph V and the promises made by respondents to invest appellants' money, as additional grounds of actionable fraud.

The judgments of dismissal are reversed on the grounds that each complaint states a cause of action in fraud. It is further ordered that appellants be given 30 days after the going down of the remittitur further to amend their complaints.

Wood, P. J., and Lillie, J., concurred.