Filed 10/19/21  Christian Educational Institute v. The Christian Herald CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| CHRISTIAN EDUCATIONAL INSTITUTE (CEI),<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>THE CHRISTIAN HERALD, INC. et al.,<br><br>    Defendants and Appellants. | B302175<br><br>(Los Angeles County<br> Super. Ct. No. BC645557) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael L. Stern, Judge.  Reversed with directions.

Law Offices of Marc Gans and Marc Gans for Defendants and Appellants.

Law Offices of Negin Yamini and Negin Yamini for Plaintiff and Respondent.

The Christian Herald, Inc. (the Herald) and its chief executive officer Alex Jun Ho Yang (collectively, the Herald defendants) appeal from a judgment after a jury trial in favor of Christian Educational Institute (CEI). CEI filed this fraud action after the Herald defendants cancelled a contract to sell CEI the Herald, a non-profit religious corporation engaged in media broadcasting. The jury found in a special verdict that the Herald defendants intentionally misrepresented to CEI that a non-profit religious organization could be sold so they could induce CEI to spend $400,000 on a fruitless acquisition.

On appeal, the Herald defendants contend the misrepresentation at issue—their assurance to CEI that "'[in] this country, you can sell [a] church. So how could there be any problem?'"—was a representation of law, not of fact, and therefore cannot provide the basis for a fraud claim.[1] We agree with the Herald defendants and reverse the judgment.

---

[1] The Herald defendants also assert on appeal that the jury finding that CEI reasonably relied on the Herald defendants' misrepresentation was not supported by substantial evidence; the special verdict findings on intentional misrepresentation and fraudulent omission were inconsistent; the trial court erred in admitting evidence of checks written to the Herald defendants by nonparty affiliates of CEI; the compensatory damages award erroneously included payments from the Herald to Yang; and the punitive damages award against Yang was not supported by evidence of Yang's ability to pay. Because we agree the judgment is based on a misrepresentation of law, we do not reach these contentions.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *CEI's Acquisition of the Herald*[2]

The Herald is a nonprofit religious corporation that operates a Korean-language newspaper, television station, radio station, and website focused on Christian programming. Yang acquired the Herald in 2012 and served as its chairman and chief executive officer. Yang spent more than $2 million of his own money on the Herald's operations and developed its television business, but by 2015 or 2016 Yang wanted to sell the company because it operated at a continual deficit, and Yang could no longer afford to support its operations.

CEI is a nonprofit religious corporation formed in 2016 by Reverend John Hoon Lee (Reverend Lee) and Ki Hyung Song. Reverend Lee died in 2018 and was succeeded by Song as CEI's chief executive officer. Reverend Lee and Song met in the seminary and decided to establish an online Christian college. Song discussed the plan with Nam Soo Choi, another acquaintance from the seminary who had previously worked as a sound engineer at the Herald, and Choi suggested CEI purchase the Herald to make use of its existing broadcast operations. Choi in turn discussed the idea with Alex Lee (Lee), a licensed real estate agent who also had worked at the Herald in advertising.

Lee arranged a meeting in which he participated with Reverend Lee, Song, and Yang to discuss a possible acquisition of the Herald. The meeting took place at a hotel in Koreatown, Los Angeles in May or June 2016. The witnesses at trial gave

---

[2]    Our summary of the facts is based on the testimony and exhibits at trial.

3

different accounts of what was discussed at the meeting. Song testified that he asked Yang and Lee, "'Is there any other problem in purchasing this company?'" Yang or Lee responded, "'The U.S. is a free country. This country, you can sell [a] church, as well. So how could there be any problem?'" Although Song was not initially sure whether Yang or Lee made the statement, Song later testified it was Lee.[3] Song was not aware at the time that a nonprofit religious corporation has no owner and could not be sold, and he trusted Yang and Lee.

Yang testified he was aware the Herald, as a nonprofit organization, could not be sold. According to Yang, "the first thing I mentioned was, it was a nonprofit. And I asked, 'This is [a] nonprofit, so how are you going to handle in terms of buying and selling?'" Reverend Lee responded to Yang that "he had a nonprofit organization himself. So he knows what to do." Lee testified he also knew at the time of the meeting that a nonprofit could not be sold, but he left the meeting after lunch. The parties only exchanged pleasantries at lunch, not the terms of a sale. He explained it was a Korean custom not to discuss business during lunch.

In June and July 2016 the parties negotiated the terms of an agreement for CEI to buy the Herald from Yang. Song testified the final agreement reflected the input of Reverend Lee, Song, Yang, and Lee; Choi also advised Song with respect to the transaction. CEI did not seek the advice of a lawyer; it did not receive any profit or loss statements for the Herald; and it did not

---

[3]     Later in his testimony Song provided another version of Lee's statement: "'[The] U.S. is so free, you can sell churches if you want to. What problem would there be?'"

investigate the Herald's nonprofit registration or broadcasting permits.

On July 29, 2016 the parties executed a "Sales Contract" stating, "[The] purpose of this contract is for [CEI] to take over from [the Herald defendants] ownership of 'The Christian Herald USA—TV, newspaper, radio' . . . and at the same time for [CEI] to exercise the obligation, rights and management of [the Herald]."[4]  The contract deliverables were defined to include "Christian Herald USA—TV, newspaper, radio, internet homepage, app, etc." plus "[a]ny asset or real property" and "any contract" in the name of the Herald, and "any financial asset and financial liability."  The contract provided for three installment payments totaling $400,000, including a $100,000 down payment upon execution, a $200,000 payment due on September 30, 2016, and a final payment of $100,000 after the Herald defendants made "best effort[s]" to change the Herald's digital television channel.  The contract provided the "[p]eriod of takeover shall be up to the 2nd payment date," and the Herald defendants would "maintain the current title until the 2nd and 3rd payments for the agreed amount are paid on the agreed date."  The Herald defendants were authorized unilaterally to cancel the contract "[i]f [the] contract amount and remaining balance are not paid in accordance with the contract" after providing two warning notices and a final 15-day notice of cancellation.

CEI made the initial payment of $100,000; however, it failed to make the second installment payment of $200,000. Yang gave CEI two extensions, and when CEI failed to pay, on

---

[4]     The executed sales contract is in Korean.  The certified translation was admitted at trial.

November 7 Yang sent CEI notice of cancellation of the sale and locked CEI out of the Herald's offices. Song admitted CEI did not pay the full second installment payment, but he testified CEI paid a total of $508,000 to the Herald defendants in connection with the acquisition, including partial purchase payments, funding for the Herald's operations and broadcast fees, and payment for expense reimbursements claimed by Yang.[5]

B.    *The Complaint and Trial*

CEI filed this action on January 3, 2017. The operative second amended complaint asserted causes of action against the Herald defendants and their television subsidiary CHTV, Inc.,[6] as well as Lee and his affiliated real estate agency, New Star Realty, for intentional misrepresentation, negligent misrepresentation, fraudulent concealment, negligence, and unjust enrichment.[7]

---

[5]    Checks admitted at trial show payments to the Herald defendants totaling approximately $352,000. The payments included checks written by entities that were not parties in the litigation. Song testified that at least one of the nonparty entities was owned by Reverend Lee's wife; no evidence was presented as to the other nonparty entities.

[6]    Reverend Lee was a named plaintiff in the initial complaint, but not the operative second amended complaint. The second amended complaint also named Choi as a defendant. The record on appeal does not reflect the final resolution of the claims against CHTV, Inc. and Choi, but CHTV and Choi did not appear at trial and are not parties to this appeal.

[7]    The operative complaint alleged Lee was working in his real estate capacity as an agent for Yang. Although at trial Lee denied he was an agent for the Herald, the Herald defendants did

6

The complaint also asserted a cause of action for breach of fiduciary duty against Lee and New Star Realty. The operative complaint alleged as to all causes of action that "[a]t all relevant times [Yang] and [Lee] fraudulently represented to [CEI] that non-profit organizations could be sold and ownership transferred through the [c]ontract dated July 29, 2016. At all times during the course of negotiations for the purchase of [the Herald], [CEI] relied on [Yang's] and [Lee's] representations that a non-profit organization could be sold and that the sale of the [Herald] and its subsidiaries would be valid." However, "[a]t all times, [Yang] and [Lee] were fully aware that a non-profit organization could not be sold/transferred in the manner in which the Christian Herald was sold/transferred to [CEI]. [Yang]'s subterfuge was to gain the financial benefits of the sale of the [Herald] and then regain control of the [Herald] once the financial bounty was reaped."

A six-day jury trial was held between July 22 and 29, 2019, with the trial bifurcated into liability and punitive damages phases. Song, Yang, Lee, and New Star broker Jenny Nam were the principal witnesses. After CEI presented its liability case, Lee and New Star Realty successfully moved for a directed verdict on all causes of action and were dismissed. The Herald defendants successfully moved for a directed verdict as to the causes of action for negligence and unjust enrichment.[8]

---

not argue at trial Lee was not an agent of the Herald or that Lee's misrepresentation should not be attributed to them.

[8] The trial court also granted CEI's motion for nonsuit as to a cross-complaint filed by the Herald defendants asserting causes of action for intentional and negligent misrepresentation.

7

On July 29, 2019 the jury returned a verdict for CEI on its claim for intentional misrepresentation, and for the Herald defendants on CEI's claims for negligent misrepresentation and fraudulent concealment. In relevant part, the jury answered "Yes" when asked on the special verdict form, "Did the Christian Herald, Inc. make a false representation of facts to Christian Education Institute?" and "Yes" when asked, "Did Christian Educational Institute reasonably rely on the representation of the Christian Herald, Inc.?"[9] The jury also made findings Yang and the Herald engaged in conduct with malice, oppression, or fraud. The jury awarded CEI $416,421 in compensatory damages and allocated responsibility 42.26% to the Herald and 57.74% to Yang.

On July 29, 2019 trial commenced on the punitive damages phase. CEI did not introduce any additional evidence, and the case proceeded to closing arguments.[10] The jury awarded $36,000

---

[9] The jury was instructed on intentional misrepresentation with CACI No. 1900 as follows: "To establish this claim against . . . each such defendant, plaintiff must prove all of the following for each defendant: [¶] One, that [the Herald defendants] represented to [CEI] that a fact was true. [¶] Two, that [the Herald defendants'] representation was false. [¶] Three, that [the Herald defendants] knew that the representation was false when [they] made it, or that [they] made the representation recklessly and without regard for its truth. [¶] . . . [¶] Four, that [the Herald defendants] intended that [CEI] rely on the representation." The jury on its special verdict form found CEI proved each element.

[10] The Herald defendants objected to the trial continuing as to punitive damages in the absence of financial documentation of the Herald defendants' ability to pay, but the court allowed the

in punitive damages against Yang and no punitive damages against the Herald.

The Herald defendants subsequently filed motions for judgment notwithstanding the verdict and for a new trial. They argued substantial evidence did not support the jury's finding that CEI reasonably relied on the misrepresentation, asserting "this was an arm[']s-length business transaction," "[t]here was no special relationship" between the parties, and "[a]ny reasonable business entity or person would have conducted its own research as to the legality of the very transaction it was attempting to undertake." The Herald defendants highlighted that CEI did not consult any experts or conduct due diligence, instead relying on amateur advice from Choi, and CEI failed to consider the Herald's corporate registration identifying it as a non-profit religious corporation "not organized for the private gain of any person." The Herald defendants did not argue the misrepresentation was a nonactionable representation of law.[11]

After a hearing, on September 27, 2019 the trial court denied the Herald defendants' posttrial motions. On August 6, 2019 the trial court entered judgment for CEI. The Herald defendants timely appealed from the judgment.

punitive damages phase to proceed. The only evidence presented at trial arguably relating to ability to pay was Yang's testimony during the liability phase that he owned a shopping center and had spent $2 million subsidizing the Herald.

[11] Although it is unusual the Herald defendants did not argue in the trial court that the alleged fraudulent misrepresentation was not actionable because it was a representation of law, CEI does not on appeal argue forfeiture or waiver.

9

## DISCUSSION

A.  *Governing Law and Standard of Review*

"The essential elements of a count for intentional misrepresentation are (1) a misrepresentation, (2) knowledge of falsity, (3) intent to induce reliance, (4) actual and justifiable reliance, and (5) resulting damage." (*Chapman v. Skype Inc.* (2013) 220 Cal.App.4th 217, 230-231; accord, *Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638; see Civil Code §§ 1709, 1710.) "[T]he representation must ordinarily be an affirmation of fact. [Citation.]  A misrepresentation of law is ordinarily not actionable in the absence of a confidential relationship or other special circumstance.  [Citation.]  The theory is either that everyone is bound to know the law, or that a statement regarding the law is a mere opinion on which one may not rely." (*Cicone v. URS Corp.* (1986) 183 Cal.App.3d 194, 202; accord, *Seeger v. Odell* (1941) 18 Cal.2d 409, 414 (*Seeger*) [plaintiff "may not justifiably rely upon mere statements of opinion, including legal conclusions drawn from a true state of facts [citations] unless the person expressing the opinion purports to have expert knowledge concerning the matter or occupies a position of confidence and trust"]; *Regus v. Schartkoff* (1957) 156 Cal.App.2d 382, 388 ["The general rule is that a misrepresentation of law is not actionable fraud.  That is, a representation of law by a layman not occupying a confidential relationship toward the one to whom it is addressed and based on facts equally known or accessible to both does not ordinarily justify reliance on the representation."]; *Agnew v. Foell* (1952) 113 Cal.App.2d 575, 577 ["a legal opinion by a layman cannot constitute the basis of recovery for fraud"].) An exception exists "where the party expressing the opinion,

10

having had superior means of information, possesses a knowledge of the law and thereby gains an unconscionable advantage over one who is ignorant and has not been in a situation to become informed." (*Regus*, at p. 388.)

The primary issue in this appeal is whether the Herald defendants' misrepresentation that CEI could buy a church (and thus a nonprofit religious corporation) was a statement of fact or a legal opinion, that is, whether the misrepresentation supported the jury's finding the Herald defendants made a "false representation of facts" to CEI. Although we ordinarily review a jury's special verdict findings for substantial evidence, because the Herald defendants do not dispute the substance of the representation, we review the question whether the representation was one of fact or law de novo. (See *Boling v. Public Employment Relations Bd.* (2018) 5 Cal.5th 898, 912 ["the application of law to undisputed facts ordinarily presents a legal question that is reviewed de novo"]; *Crocker National Bank v. City and County of San Francisco* (1989) 49 Cal.3d 881, 888 [because question whether a computer component constituted a "fixture" for property-tax purposes required "a critical consideration, in a factual context, of legal principles and their underlying values," the question is "predominantly legal and its determination is reviewed independently"].)

B.    *The Herald Defendants' Misrepresentation of Law Does Not Support the Jury's Verdict*

CEI adduced only one misrepresentation at trial to support its fraud claims: when Song asked at the initial meeting of the parties whether there would be any problem with CEI purchasing the Herald from Yang, Lee responded, "'The U.S. is a free

country.  This country, you can sell [a] church, as well.  So how could there be any problem?'"  Insofar as this was a misrepresentation (which the Herald defendants do not dispute), it was a misrepresentation of law—namely, an assurance that it is legal to sell a nonprofit religious corporation (the equivalent of a church) in the United States.[12]  CEI does not contend, nor does the evidence support a finding, that one of the exceptions to the general rule that representations of law are nonactionable applies here: it is undisputed the representation was made by a layman (Lee) who was not in a confidential relationship with the recipient of the representation (Song), and it was based on facts equally known or accessible to Lee and Song.  (*Regus v. Schartkoff, supra*, 156 Cal.App.2d at p. 388.)

*Zeh v. Alameda Community Hotel Corp.* (1932) 122 Cal.App. 366, cited by the Herald defendants, is directly on point.  There, an agent acting for a hotel developer represented to a potential investor that preferred stock in the hotel would pay interest, although under California law preferred stock cannot.  (*Id.* at pp. 367-369.)  Affirming dismissal of the investor's claim for rescission upon fraud, the Court of Appeal explained, "Any statements made as to payment of interest upon this stock, and the provisions of the stock certificates in this respect, were misrepresentations of law.  It is well settled that such misrepresentations, at least where there is no relation of trust or confidence between the parties, do not amount to fraud."  (*Id.* at p. 369.)  The court reasoned, "The allegation of the complaint in the instant case that 'the plaintiff is a woman unfamiliar with the

---

[12]     We do not reach the Herald defendants' argument the misrepresentation was not actionable because it was puffery.

12

difference between interest and dividends' shows clearly that the gravamen of her complaint is ignorance of the law, upon which she had no right to rely. The truth or falsity of such representations could have been tested by ordinary vigilance and attention. The law is presumed to be equally within the knowledge of all parties. There is no allegation of any confidential or fiduciary relations between the parties hereto." (*Ibid.*) So too here, the gravamen of CEI's claim is that despite itself being a nonprofit religious corporation involved in an arm's-length negotiation of a $400,000 acquisition over a two-month period, CEI was ignorant of the laws governing transactions involving nonprofit religious corporations and acted in total reliance on Lee's assurance that even churches can be sold in the United States.

The Supreme Court's decision in *Haviland v. Southern California Edison Co.* (1916) 172 Cal. 601, upon which the *Zeh* court relied, is also instructive. There, an electric utility obtained a liability release from an injured lineman by telling the lineman and his wife the release "was a mere matter of form, which he had to sign in order to be placed on the pay[]roll, and that if he did sign it he would receive $42 on account of wages for July (he had not been working during that month), and would be kept on the pay[]roll until able to work." (*Id.* at p. 608.) The Supreme Court held the trial court erred in instructing the jury that a waiver obtained by fraud is void, explaining, "Assuming that these representations were made by [defendant], their making did not constitute fraud in the legal sense. They were not statements of fact, but at most misrepresentations of law. . . . Whether the true ground for the rule be that everyone is presumed (or, rather, bound) to know the law, or that a

13

representation regarding the law constitutes an expression of opinion upon which the party to whom it is addressed has no right to rely, the rule itself is thoroughly well settled." (*Id.* at pp. 608-609.)

CEI relies on *Seeger, supra*, 18 Cal.2d at page 416 for the proposition that "a false statement of fact . . . is not rendered less actionable because it also contained legal conclusions." CEI argues, "Alex Lee's intentionally false legal representation that a nonprofit organization could be sold was based on the knowingly false premise that, in a free country such as the [U.S.], anything could be sold. Hence, not only was the legal conclusion relayed by Alex Lee an intentional misrepresentation, but the purported fact on which it was based—that in a free country anything could be sold—was knowingly false as well." This bootstrap argument fails: the only misrepresentation at issue here was that a church can be sold in the United States. The fact the premise of Lee's statement was a fact (that anything can be sold in the United States) does not change the misrepresentation to one of fact. Moreover, *Seeger* is distinguishable. The Supreme Court in *Seeger* held an attorney's false representation to property owners who had defaulted on their mortgage that a levy and sale of their property had occurred, made to induce them to agree to lease their property for oil drilling so they would "receive some return from the land out of which they would otherwise get nothing," was a false statement of fact, notwithstanding that it related to the legal status of their property, and their examination of public records "would have revealed to plaintiffs the falsity of the representation." (*Seeger*, at pp. 413, 415.)

*Bobak v. Mackey* (1951) 107 Cal.App.2d 55, also relied on by CEI, is likewise distinguishable. In that case, the defendant

14

vendor of real property falsely represented to the buyer that the property at issue was located in a light manufacturing zone, when in fact it was located in a different zone where such manufacturing was prohibited. (*Id.* at pp. 56-57.) Rejecting the vendor's appeal from the judgment for fraud, the Court of Appeal reasoned, "Such a statement, if made, and relied upon by the purchaser is as much a representation of fact as would be a statement that the premises involved were within the corporate limits of Los Angeles, when they were not, or that they abutted on a certain named thoroughfare in Los Angeles, when they did not. In each of these examples the facts represented come about by reason of law. But the facts as stated are not for that reason misrepresentations of law, but on the contrary of facts. The same is true here. . . . [¶] The representation was not a mere misrepresentation of law, i.e., the classification made by the law, but of the fact that the property lay within a zone of a particular character . . . ." (*Id.* at p. 57.) By contrast, Lee's pronouncement that anything can be sold in the United States, including a church, is a "classification made by law" about types of businesses that can be sold, not, for example, a misrepresentation about the Herald's corporate status as a nonprofit corporation, which was undisputed.

15

## DISPOSITION

The judgment for CEI is reversed. The case is remanded to the trial court for entry of a new judgment in favor of the Herald defendants on CEI's cause of action for intentional misrepresentation. The Herald defendants are to recover their costs on appeal.

FEUER, J.

We concur:

SEGAL, Acting P. J.

IBARRA, J.*

---

\* Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.