In re Fred TILLMAN, Debtor.

Regina LANCE, Plaintiff,

v.

Fred TILLMAN, Defendant.

Bankruptcy No. 95–732.
Adv. No. 95–87.

United States Bankruptcy Court,
D. Columbia.

July 3, 1996.

Irena I. Karpinski, Washington, DC, for Plaintiff.

Ronald Bergman, Houlon & Berman, New Carrollton, MD, for Defendant.

### DECISION

S. MARTIN TEEL, Jr., Bankruptcy Judge.

This matter comes before the court on a complaint by the plaintiff, Regina Lance, seeking a declaration that the judgment debt owed to her by the debtor, Fred Tillman, is nondischargeable under 11 U.S.C. § 523(a)(2)(A). The court held a trial on this matter on May 14, 1996, and after considering the evidence presented, argument of counsel and post-trial memoranda issues the following decision.

Briefly, the court concludes that Lance justifiably relied on the debtor's knowing and intentional misrepresentation, and according-

ly, the court finds in favor of the plaintiff and declares the judgment nondischargeable.

## FINDINGS OF FACT

Lance first met the debtor in the fall of 1991 through an acquaintance she met in London, England, where she was attending the London School of Economics and Political Science. Lance returned to Washington, D.C., in May 1992 and married Franklin Daso. Having just completed a masters in finance at New York University, Lance started working for Coopers & Lybrand in Washington as a technology consultant. In the fall of 1992, Lance's acquaintance from London contacted her to ask her permission to give her phone number to a friend of his—the debtor. Lance, who was experiencing marital problems in the fall of 1992 and ceased living with her husband in January 1993, gave her permission, and the debtor first telephoned Lance in December 1992. Soon after, the debtor and Lance began to date regularly, beginning an intimate relationship.

By way of background, the debtor attended American University on a full basketball scholarship, which restricted his ability to work to the summer months. In the spring of 1991 of his senior year, his final basketball season having ended, the debtor began promoting parties and musical events at local clubs and bars as a way of making money. After graduating from American University with a degree in finance in May 1991, the debtor started his own real estate finance business. To make ends meet, the debtor also worked two part time jobs and lived with his mother.

From early on in their relationship, the debtor related to Lance an elaborate tale of financial woe. The debtor described a promotions business he had been running with a partner from Nigeria. According to the debtor, the business had been run "underground"—meaning out of sight of the taxing authorities—for years and owed a substantial amount of federal taxes to the Internal Revenue Service ("IRS"). The debtor further recounted how his Nigerian partner had recently run off with all the money from the joint-account of the business. The debtor lamented to Lance that he was left to face the IRS, which had seized all the assets of the promotion business forcing it to close down. The debtor told Lance that a tax attorney advised him that unless the debtor came up with $18,000 for the IRS, the debtor would have to go to jail. The debtor confided to Lance that he did not have the money and rather than go to jail, he was determined to leave the country and go live in Jamaica.

The debtor repeatedly complained to Lance about his tax problems over the next few months until Lance finally consented to give the debtor money to help him out of his "dire and desperate IRS problem." Lance specifically testified that she gave the debtor the money solely for that purpose and would not have given the money to the debtor to pay credit card bills or just for his general support.

Lance asked the debtor how much money he needed and when he needed it. The debtor responded that he needed $13,800 by Friday, March 5, 1993. Lance expressed concern that due to the large amount of money requested by the debtor she would need to get the funds from another account. Lance met the debtor in downtown Washington, D.C., on Saturday, March 6, 1993, and gave him a cashier's check for $13,800. At that time, no papers were signed and no agreement was made concerning repayment. Lance conceded that at the time she knew the debtor could not repay the money immediately.

After Lance gave the debtor the funds, the relationship, which up to that point had been "passionate," began to cool. Lance began traveling significantly with work, and the debtor began seeing another woman. In June 1993, Lance and the debtor spoke about setting up a repayment schedule for the $13,800. The debtor agreed to repay the funds on October 15, 1993. After this conversation in June, the relationship cooled off completely and any future contact was limited to Lance contacting the debtor to inquire about the money he owed to her. When Lance contacted the debtor in October 1993 concerning repayment, the debtor put her off for two weeks, saying he did not have the money. After this happened a few times, Lance filed a complaint in the District Court of

Maryland for Montgomery County on December 15, 1993.

In her handwritten complaint, in relevant part, Lance stated:

> On March 6, 1993, I loaned Fred Tillman [the debtor] $13,800. According to Fred, the purpose of the loan was to pay tax fraud charges owed to the IRS. He claimed that he was in dire need of the money so that he would not be sent to prison on tax evasion charges.... Rather than suspect that I have been the victim of some type of fraud and take a case to criminal court, I have brought my case to civil court for resolution.

In the ensuing depositions and answers to interrogatories, the debtor denied having tax problems with the IRS and denied having told Lance the story about the promotions business. Rather, the debtor stated that his only financial problems involved substantial credit card debt arising from business and personal expenses. The debtor further insisted that the funds were given to him as a gift by Lance to help him out with his business.

In 1994, a trial was held by the Maryland District Court. The narrow issue tried by the Maryland court was whether the funds given to the debtor by Lance were a gift or a loan. The Maryland court found that the funds were a loan and judgment was entered on July 20, 1994, in favor of Lance in the amount of $13,800 plus $110 in court costs.

The debtor filed a chapter 7 petition in this court on June 22, 1995. The debtor's discharge was granted on October 11, 1995. Lance seeks to have the debt owed to her declared nondischargeable under 11 U.S.C. § 523(a)(2)(A) on the grounds that the debtor's allegedly false representations concern-

ing his IRS troubles fraudulently induced her to loan him the $13,800.

The Maryland court decision conclusively adjudicated the issue of liability—the debtor is liable to Lance for the funds. Thus, the sole issue remaining for this court to decide is the nondischargeability of the debt owed to Lance.

### CONCLUSIONS OF LAW

#### I

11 U.S.C. § 523(a) provides a list of certain debts that are nondischargeable in bankruptcy. Specifically, § 523(a)(2)(A) provides:

> [a] discharge under section 727 ... of this title does not discharge an individual debtor from any debt ... for money ... to the extent obtained, by ... false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

■ The elements necessary to establish a debt is nondischargeable under § 523(a)(2)(A) are (1) that the debtor made a misrepresentation; (2) that the debtor knew the misrepresentation was false; (3) that the debtor made the misrepresentation with the intention of deceiving the plaintiff; (4) that the plaintiff relied on the misrepresentation; (5) that the plaintiff's reliance was justified; and (6) that the plaintiff sustained a loss as a result of the misrepresentation. *See Field v. Mans,* —— U.S. ——, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995); *In re Kirsh,* 973 F.2d 1454, 1457 (9th Cir.1992). The plaintiff must prove these elements by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).[1]

At the conclusion of the trial on May 14, 1996, the court made the following oral findings covering elements (1), (2), (3), (4) and

---

1. Although not raised by the parties, the court notes that this case does not concern "a statement respecting the debtor's ... financial condition," as referred to in § 523(a)(2)(A) and (B). That language has been interpreted narrowly to refer to representations specifically *concerning* the debtor's financial worth or condition, which under § 523(a)(2)(B) require a statement in writing to establish nondischargeability. *See, e.g., Field v. Mans,* —— U.S. at ——–——, 116 S.Ct. at 446–47 (differentiating paragraph (A) from (B) by describing paragraph (A) as dealing with "a

statement, perhaps oral, about something other than his bank balance"); *In re Kirsh,* 973 F.2d at 1457 (debtors' statement of property value and encumbrances thereon "did not purport to set forth the debtors' net worth or overall financial condition, so our analysis must revolve around [paragraph (A)]"). Here, the debtor's misrepresentation addressed a broader issue of possible criminal liability due to failure to pay taxes, which is more appropriately addressed under paragraph (A).

(6). In general, the court credited Lance's testimony as more credible than the debtor's. First, the court concluded that Lance proved misrepresentation by the debtor with regard to his financial problems with the IRS and the impending incarceration.[2] Second, the court concluded that the debtor knowingly made the misrepresentation with the intent to deceive Lance and to encourage her to provide him with a substantial sum of money. Third, the court concluded that Lance relied on the debtor's misrepresentation in her decision to loan him the funds and thus the debtor's misrepresentation proximately caused Lance to make the loan. Fourth, the court concluded that Lance sustained a loss as a result of the misrepresentation because the debtor ultimately refused to make repayment.

Thus, the only issue remaining to be decided is element (5)—whether Lance's reliance on the debtor's misrepresentations was justified. At the trial, the court reserved judgment on this issue. However, the court did opine preliminarily that it appeared to the court that the debtor took advantage of his passionate relationship with Lance to play on her heartstrings and her clouded emotions in order to obtain the funds.

## II

■ The requirement of justifiable reliance was recently established by the Supreme Court's decision in *Field v. Mans*, ⸺ U.S. ⸺, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995). In *Field*, the Court held that the proper level of reliance necessary under § 523(a)(2)(A) is justifiable, rejecting the higher standard of reasonable or no qualifying standard.[3] In so holding, the Court relied on traditional common law definitions of fraudulent misrepresentation which require a showing of justifiable reliance, as discussed in the Restatement (Second) of Torts (1976) and W. Keeton, D. Dobbs, R. Keeton and D. Owen, *Prosser and Keeton on Torts* (5th ed. 1984). Specifically, the Court concluded that "Congress ... inten[ded] to adopt a common-law understanding of the terms it used ..." in § 523(a)(2)(A), which the Court concluded required a showing of justifiable reliance. *Field*, ⸺ U.S. at ⸺, 116 S.Ct. at 443. Accordingly, this court must turn to the common-law definition of justifiable to determine what Lance must show in order to demonstrate that her reliance was justifiable.

The Court in *Field* briefly explained the justifiable standard. Apparently due to the particular facts presented in *Field*, the Court focussed exclusively on the level of investigation necessary to meet the justifiable standard due to the facts in *Field*. Contrasting justifiable and reasonable reliance, the Court noted that according to the Restatement the level of investigation necessary to satisfy the justifiable standard is very minimal, essentially requiring only that the plaintiff not ignore a warning sign that would be obvious to the plaintiff, given the particular plaintiff's qualities and characteristics. *Id.* at ⸺, 116 S.Ct. at 444. The Court also noted Prosser and Keeton's similar explanation of justifiable, as it relates to investigation, which provides that the plaintiff may not ignore relevant facts that would be apparent to the plaintiff from a cursory glance, given the particular plaintiff's knowledge and intelligence. *Id.*

---

**2.** A substantial factor weighing in Lance's favor was the fact that she first recounted the debtor's story about the IRS in her initial complaint filed back in 1993. Not only is it unbelievable that Lance would have come up with such an unlikely story right from the outset. But more importantly, it does not stand to reason that she would have made up such a story about the IRS in an attempt to urge that her contribution to the debtor was a loan when it would have been far easier to prove that it was a loan if she said that the money was intended for his business.

**3.** Although due to the particular facts presented in *Field*, the Court specifically addressed the standard of reliance necessary to establish "actual fraud" under § 523(a)(2)(A), the Court was quick to point out that it did not mean to suggest that the standard would be different for "false pretense or representation" under § 523(a)(2)(A), and other courts have concluded that the standard should be the same for all three infractions addressed under § 523(a)(2)(A). *Field*, ⸺ U.S. at ⸺ n. 8, 116 S.Ct. at 443 n. 8; *see, e.g., Mayer v. Spanel Int'l Ltd.*, 51 F.3d 670, 674 (7th Cir.), *cert. denied*, ⸺ U.S. ⸺, 116 S.Ct. 563, 133 L.Ed.2d 488 (1995). Accordingly, this court concludes that the holding in *Field* is applicable to the false representation presented by this case.

However, a review of the Restatement actually reveals a two-pronged analysis of justifiability relevant to this case, requiring not only a review of the sufficiency of the investigation but also a review of the materiality of the misrepresentation. *See* Restatement (Second) of Torts, §§ 537, 538, 540, 541. In terms of the investigation, as the Court in *Field* noted, § 540 of the Restatement provides that the recipient may justifiably rely on a fraudulent misrepresentation without an investigation even though he might have determined its falsity by doing so. The recipient's reliance is not justified, according to § 541 of the Restatement, only if the falsity was obvious to that particular recipient based on a cursory inspection.

In terms of materiality, § 538 of the Restatement provides that the matter misrepresented must be material in order for the reliance to be justifiable. A misrepresentation is material if it would be important to the reasonable man or would be important to the plaintiff for a particular reason known to the debtor. Specifically, § 538 of Restatement, entitled "Materiality of Misrepresentation," provides:

(1) Reliance upon a fraudulent misrepresentation is not justifiable unless the matter misrepresented is material. (2) The matter is material if

(a) a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question; or

(b) the maker of the representation knows or has reason to know that its recip-. ient regards or is likely to regard the matter as important in determining his choice of action, although a reasonable man would not so regard it.

Significantly, the Comment to § 538 of the Restatement makes clear that non-pecuniary, sentimental concerns are relevant to the analysis of materiality:

d. In determining whether a fact is material it is not necessary that it be one that a reasonable man would regard as affecting the pecuniary advantages of the transaction. There are many more-or-less sentimental considerations that the ordinary man regards as important. Thus it is natural that a person should wish to possess portraits of his ancestors even though they have no value as works of art. A fraudulent misrepresentation that a particular picture is a portrait of the purchaser's great-grandfather is a misrepresentation of a material fact.

\*   \*   \*   \*   \*   \*

f. Even though the matter misrepresented is one to which a reasonable man would not attach any importance in determining his course of action in the transaction in hand, it is nevertheless material if the maker knows that the recipient, because of his own peculiarities, is likely to attach importance to it. There are many persons whose judgment, even in important transactions, is likely to be determined by considerations that the normal man would regard as altogether trivial or even ridiculous. One who practices upon another's known idiosyncracies cannot complain if he is held liable when he is successful in what he is endeavoring to accomplish.

### III

Turning to the facts of this case, the debtor argues that Lance's reliance was not justifiable for two reasons which essentially fall into the two-pronged analysis described above. Basically, the debtor argues, first, that his misrepresentation should have been obviously false to Lance, and, second, that his misrepresentation was not material. The court rejects both of the debtor's arguments, addressing each in turn.

### A

■ The debtor's first argument is that it was not justifiable for Lance to rely on the debtor's story because it was obviously false. Specifically, the debtor argues that his claim that he would go to prison for failure to pay taxes is patently false because failure to pay taxes is not an infraction punishable by imprisonment. The debtor argues that a person with Lance's educational and professional background should be aware that only civil sanctions result from a non-willful non-payment of taxes. The debtor further argues

that Lance should have questioned the absence of any circumstantial evidence, such as court notices, referring to the debtor's IRS problems.

The court rejects this argument. As explained above, Lance need not have initiated any independent investigation of the veracity of the debtor's statement. Rather, she is only required to have taken note of any indications of falsehood that would have been obvious to her given her particular qualities and characteristics. As Lance herself argues, although she is exceptionally well educated and thus would be held to a higher standard than the average person, she is not an expert on tax law. The court finds that the distinction between civil and criminal violations of the tax law urged by the debtor—assuming it is accurate—is too subtle to rise to the level of an obvious tipoff of falsehood foreclosing justifiable reliance by Lance. Nor should she have been tipped off by the lack of any mention of court proceedings, a necessary step to incarceration. Absent some special training or experience, the court would not expect Lance to have picked up on the potential falsity of the debtor's representation.

Furthermore, even if Lance could be expected to know that non-payment of taxes, without more, is not punishable by imprisonment, the debtor's representation to Lance went well beyond simply non-payment of taxes. According to Lance's complaint filed with the District Court of Maryland for Montgomery County, the debtor described his trouble with the IRS as "tax fraud charges," which by the debtor's own admission could be punishable by imprisonment. For all these reasons, the court concludes that the falsity of the debtor's misrepresentations was not obvious to Lance such that it would preclude her justifiable reliance on the misrepresentation.

### B

■ Turning to the second prong of the justifiable analysis, the debtor argues that his misrepresentation was not sufficiently material to support Lance's justifiable reliance. Specifically, the debtor argues that it is not justifiable to rely on a representation of financial *insecurity* because it would have given Lance no expectation of repayment. The debtor argues that only statements that give the lender a *greater* assurance of repayment are justifiably relied on. And because the misrepresentation made by the debtor about his debt to the IRS should have given Lance a *reduced* assurance of repayment, it was not justifiable for Lance to rely on it.

The debtor's argument, while intriguing, is too clever by half. As stated in the Restatement, "[o]ne who practices upon another's known idiosyncracies cannot complain if he is held liable when he is successful in what he is endeavoring to accomplish." Restatement (Second) of Torts, § 538 Comment f. The debtor's view of materiality for justifiable reliance is too narrow. Again, as stated in the Restatement, "[i]n determining whether a fact is material it is not necessary that it be one that a reasonable man would regard as affecting pecuniary advantages of the transaction. There are many more-or-less sentimental considerations that the ordinary man regards as important." *Id.*, Comment d.

The court recognizes that facts of this case are somewhat unusual for a nondischargeability action under § 523(a)(2)(A) in that the debtor conned Lance not by asserting greater wealth and security than he really possessed, but rather by asserting less wealth and security than he really possessed. Indeed, he claimed a desperate need for money from Lance. But therein lies the fraud. After developing an intimate relationship with Lance, the debtor knowingly exploited Lance's emotions for him by spinning an elaborate tale of financial woe and impending disaster that was clearly calculated to engender sympathy and money from Lance. Ironically, it is fair to say that Lance probably would have refused the money to the debtor had he appealed to her in the traditional fashion, assuring her of his wealth and providing her with guarantees of security. No, the debtor knew that the only way to get the money he wanted out of Lance was to play on her heartstrings and ask her to give him the money simply because he was in dire need. The debtor's practice upon Lance's sentimental vulnerabilities and idiosyncracies is clearly a material misrepresentation. For

all these reasons, the court concludes that the debtor's misrepresentation was material.

## IV

Finally, there are numerous cases finding that evidence of friendship or a close personal relationship weighs heavily in favor of finding at least justifiable reliance if not the higher level of reasonable reliance. The courts reason that creditors are not to be faulted for relying on the honesty of close friends who take advantage of them. *See In re Kirsh,* 973 F.2d at 1460 ("[I]t is fair to say that the lender simply relied upon the honesty of an old friend, who took advantage of him. That is a typical case of justifiable reliance"); *In re Phillips,* 804 F.2d 930, 933 (6th Cir.1986) ("[C]ases involving commercial lenders are inapposite to this situation which involves a personal loan between individuals with a 25–year relationship ... [which] weighs heavily in favor of finding reasonable reliance"); *In re Dunston,* 146 B.R. 269, 275–76 (D.Colo.1992) (Close relationship between mother and son supports finding of reasonable reliance); *In re Evans,* 181 B.R. 508, 514 (Bankr.S.D.Cal.1995) ("The plaintiff entered into the transactions not for profit, but to accommodate his friend" which supports finding of justifiable reliance); *In re Spar,* 176 B.R. 321, 328 (Bankr.S.D.N.Y.1994) ("Kuper relied on the honesty of an old and dear friend to his detriment" which supports finding of reasonable reliance); *In re Sobel,* 37 B.R. 780, 785 (Bankr.E.D.N.Y.1984) ("They are not to be faulted if they believed that their close friends and the godparents of one of their children would deal honestly with them").

As the numerous cases cited above conclude, this court will not fault Lance for relying on the honesty of an intimate companion who took advantage of her. *See, e.g., In re Kirsh,* 973 F.2d at 1460. Nor will the court reward the debtor for his cunning. "[T]he opportunity for a completely unencumbered new beginning [is limited to] the 'honest but unfortunate debtor.'" *Grogan v. Garner,* 498 U.S. at 287, 111 S.Ct. at 659 (citation omitted).

## CONCLUSION

Accordingly, the court concludes that Lance did justifiably rely on the debtor's misrepresentation. Thus, the plaintiff has satisfied the necessary elements of her complaint for nondischargeability under § 523(a)(2)(A). An appropriate judgment will follow.