# United States Court of Appeals

## For the First Circuit

No. 02-9002

IN RE: DANTE ANTHONY SPADONI,

Debtor.

_____

JOHN LENTZ,

Plaintiff, Appellant,

v.

DANTE ANTHONY SPADONI,

Defendant, Appellee.

ON APPEAL FROM THE UNITED STATES BANKRUPTCY APPELLATE PANEL

FOR THE FIRST CIRCUIT

Before

Boudin, Chief Judge,

Torruella and Howard, Circuit Judges.

Bruce T. Macdonald for appellant.
Gary L. Meyers with whom Law Office of Gary L. Meyers was on brief for the appellee.

January 14, 2003

**BOUDIN**, <u>Chief Judge</u>.  In July 1994, John Lentz began to lease space in his auto body shop in Revere, Massachusetts to his friend, Dante Spadoni.  Spadoni used the space, comprising an office and repair bay, to operate a cellular telephone business. By the beginning of 1998, Spadoni had fallen several months behind on the rent, then $900 per month.  Lentz asked Spadoni about the overdue rent and Spadoni assured Lentz that he would take care of it.  In fact, Spadoni paid no rent thereafter, apart (possibly) for a single payment of $1,500 in July 1998.

Lentz later testified that during much of 1998 he pressed Spadoni for the rent each month and was assured that the rent would be paid.  Lentz said that he "trusted" Spadoni and gave him "the benefit of the doubt" because they were friends.  In September 1998 Spadoni quit the premises without notice and notified Lentz that he was leaving the towing business that he and Lentz were then operating together.  According to Lentz, Spadoni at that time owed $9,700 in back rent.

Over a year later, in December 1999, Lentz initiated a state court action to recover the rent.  Spadoni immediately filed a Chapter 7 bankruptcy proceeding, listing Lentz as an unsecured creditor in the amount of $10,000.  Lentz asserted his rent claim in the bankruptcy court, claiming that it was not dischargeable under section 523(a)(2)(A) of the Bankruptcy Code.  11 U.S.C. § 523(a)(2)(A) (2000).  That provision, in pertinent part, makes non-

dischargeable "any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud . . . ."

After a bench trial, the bankruptcy judge ruled that Spadoni's promises to pay were knowingly false when made and were intended to deceive Lentz. Spadoni denied this but had already admitted under oath in another proceeding that he did not intend to pay rent after 1997. However, to invoke section 523(a)(2)(A) the claimant must also show that he "actually and justifiably relied" on the false statement or statements. Palmacci v. Umpierrez, 121 F.3d 781, 786 (1st Cir. 1997). The bankruptcy judge said that Lentz had failed to prove this "element," "namely, that he actually and justifiably relied . . . ." By way of explanation, the judge said as follows:

> Mr. Lentz conceded that he took no action against the debtor during the period when he made the promises to pay. Mr. Lentz should have known after a couple of months that the debtor's promises were suspect and taken action against him. His action against the debtor for unpaid rent was not filed until December of 1999, more than a year after the debtor left and almost two years after the debtor stopped paying rent.

On review, the Bankruptcy Appellate Panel ("BAP") sustained the bankruptcy judge on the ground that her finding of no actual reliance by Lentz was not clearly erroneous. Lentz now appeals to us, arguing that the bankruptcy judge made no such

finding. Spadoni responds that the bankruptcy judge ruled in "the conjunctive" that there was no "actual and justifiable reliance" and--because the former finding is not "clearly erroneous"--the determination on justifiability need not be considered.

The standard of review on this appeal requires that we respect, unless "clearly erroneous," all findings of fact by the bankruptcy court, which includes any finding of actual reliance and any raw fact findings pertinent to the issue of justifiable reliance. Brandt v. REPCO Printers & Lithographics, Inc., 132 F.3d 104, 107-08 (1st Cir. 1997). The definition of the standard of justifiability is a purely legal issue, reviewable de novo (this is uncontroversial), and a divided panel of this court held that the same standard governs application of the justifiability standard to particular facts--a law application or "mixed" question. See Sanford Inst. for Sav. v. Gallo, 156 F.3d 71, 74 (1st Cir. 1998).[1]

We begin with the "actual reliance" requirement. The statute prevents the discharge of a debt to the extent that the money or other property or services were "obtained by" deliberately false statements. Here, the debt is for rent due, and the property or services--the use of the subleased space--were "obtained by"

---

[1]Although purely legal and purely factual questions have quite fixed standards of review, review of decisions applying general standards to known facts varies from issue to issue, partly because it is affected by policy considerations peculiar to particular issues. See, e.g., Ornelas v. United States, 517 U.S. 690, 697-98 (1996).

Spadoni insofar as Lentz continued to lease the space to Spadoni based on the latter's statements that the rent would be paid despite the temporary arrearage. Lentz testified that he relied on Spadoni's statements in continuing the lease ("I trusted him," I gave him "the benefit of the doubt").

The BAP read the bankruptcy judge's decision as rejecting this claim of actual reliance and held that the decision on this issue was not clearly erroneous. Conceivably, the bankruptcy judge could have found no actual reliance, although this would have been surprising. Lentz testified under oath that he did rely; no obvious reason exists why he should not have done so at the outset; and there was certainly no direct evidence that Lentz was lying. Of course, friendship may have reinforced the decision but it is enough for reliance if the false statements contributed to it. In re Vann, 67 F.3d 277, 281, 284 (11th Cir. 1995).

In our view, the BAP misread the bankruptcy judge's decision in attributing to her a finding that Lentz did not actually rely. She never said that she disbelieved Lentz on this point or that he did not actually rely on Spadoni's promises. The explanation she did give for finding that Lentz's claim of non-dischargeability failed--quoted in full above--is that after a few months Lentz "should have known" that the promises were unreliable. The "should have known" language clearly refers to the reasonableness of the reliance, not its existence; it would be

-5-

quite a different matter if she had said that Lentz "did know" that the promises were false.

In the passage quoted above, the bankruptcy judge also mentioned briefly Lentz's failure to bring suit for the back rent for just over a year after Spadoni left in September 1998. What this further delay has to do with Lentz's actual trust or lack of it in Spadoni's promises is unclear, nor is the record clear as to why the lawsuit was delayed until December 1999. Primarily, this later delay seems to have been cited as a consonant example of Lentz's lack of diligence--an issue connected, if at all, primarily to the question of justifiable reliance.

On appeal, Spadoni argues that the bankruptcy judge necessarily found a lack of actual reliance because she, in the "conjunctive," said that Lentz had failed to establish the element of "actual and justifiable reliance." The argument is a non sequitur. If one chooses verbally to lump the two issues together as a single "element," as the bankruptcy judge did, then to say that the reliance was not justifiable means that the element of "actual and justifiable reliance" has not been established, regardless of whether actual reliance existed or not.

This brings us to the ground on which we think the bankruptcy judge's decision rested, namely, her conclusion that Lentz's reliance was unjustified. "Reasonable reliance"--measured by an objective standard--is a requirement under various doctrines.

See, e.g., Restatement (Second) of Contracts § 139 (1981) (reliance must be reasonable in a contract action).  However, the Supreme Court has held that a less demanding "intermediate" standard, which it calls "justifiable reliance," applies under section 523(a)(2)(A).  Field v. Mans, 516 U.S. 59, 73-74 (1995).  In particular, the Court said that the circumstances of the reliance claim must be taken into account and that the individual is not obliged to investigate statements made to him (although he cannot shut his eyes to an obvious falsehood).  See id. at 71.

In applying this creditor-friendly test to the case at hand, we would be obligated to defer to any pertinent findings of raw fact made by the bankruptcy judge but there are none: the judge simply concluded that after a few months Lentz "should have known" that Spadoni was not to be trusted.  This is essentially a normative judgment.  Since we are obliged under Gallo to make our own de novo judgment on this ultimate question, it is of no moment whether (as Lentz claims on appeal) the bankruptcy judge's locution suggests her use of the reasonable man standard discarded by the Supreme Court.

In a nutshell, we think that Spadoni's assurances were perfectly creditable at the start of 1998.  According to Lentz's uncontradicted testimony, Spadoni said that business had been slow but was developing.  To us, there is no obvious reason why Lentz's trust, even if tested, could not rationally endure from January

into early September, as Spadoni's assurances were renewed from month to month. Perhaps the friendship between the two men made the assurances more palatable than normal; but this is one of those "characteristics of the particular plaintiff and circumstances of the case" that the Supreme Court allows to the plaintiff. See Field, 516 U.S. at 71.[2]

In oral argument--although not in his brief in this court--Spadoni contends that his relations with Lentz were worsening from 1997 onward due to other disagreements that were Lentz's fault. This may be so but Spadoni does not explain why this prevented Lentz from relying justifiably upon Spadoni's specific promises as to rent payments. Spadoni's further claim at oral argument--that inherently Lentz had an obligation to conduct an investigation into Spadoni's ability to pay--is on these facts at odds with the Supreme Court's expressed views in Field.

In general, the "fresh start" objective of the Bankruptcy Code has led courts to construe strictly non-dischargeability claims. See, e.g., In re Rembert 141 F.3d 277, 281 (6th Cir.), cert. denied, 525 U.S. 978 (1998). If the Supreme Court's decision in Field appears to be in some tension with this tradition, it reflects another over-generalization, namely, that the fresh start

---

[2]Several cases have relied on friendship or like relationships as a reinforcing factor helping to justify the lender's trust. See In re Tillman, 197 B.R. 165, 171 (Bankr. D.D.C., 1996) (collecting cases).

is for the "honest but unfortunate debtor." <u>Grogan</u> v. <u>Garner</u>, 498 U.S. 279, 286-87 (1991) (quoting <u>Local Loan Co.</u> v. <u>Hunt</u>, 292 U.S. 234, 244 (1934)). In all events, in light of <u>Field</u>, the natural tendency of judges to insist on reasonable-man prudence from the creditor must be somewhat tempered and, on <u>de novo</u> review, we think Lentz's forbearance was "justifiable."

Accordingly, the rent from January 1998 through September 1998 qualifies as a non-dischargeable debt. Lentz did not show that Spadoni made false promises prior to January 1998, so the rent unpaid in 1997 does not fall within section 523(a)(2)(A). On remand, the bankruptcy judge should make her own best estimate of how much rent Lentz showed to be attributable to 1998. Although she is free to conduct further proceedings at her discretion, she is equally free to hold the parties to the evidence already tendered and bring this case to a swift conclusion.

The judgment of the BAP is <u>vacated</u> and the matter <u>remanded</u> to the BAP with directions to remand the case to the Bankruptcy Court so it may proceed in accordance with this opinion.