Filed 7/24/13  Bassil v. Sarkis CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| GERMAN BASSIL,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>STEFAN SARKIS et al.,<br><br>        Defendants and Respondents. | A136401<br><br>(Alameda County<br>Super. Ct. No. RG10534730) |

Plaintiff German Bassil appeals from a judgment dismissing his second amended complaint against defendants Stefan Sarkis and Alexandra Moari following the sustaining of defendants' demurrer.  We reverse the judgment as to plaintiff's cause of action for fraud and affirm the dismissal of his other causes of action.

## I.  BACKROUND

On September 2, 2010, plaintiff sued defendants Sarkis and Moari for fraud, breach of oral contract, and breach of the implied covenant of good faith and fair dealing.  He sued Tetyana Segadina in the same action.  Defendants demurred to the complaint as it related to them.  Plaintiff filed a nonopposition to defendants' demurrer, and filed his first amended complaint on the same day.  Defendants again demurred to the first, second and third causes of action, as they related to them.  The trial court sustained the demurrer with leave to amend.  The court's ruling stated, among other things, plaintiff should "allege a fraud claim with requisite specificity and indicate how Plaintiff's reliance on [defendants'] alleged misrepresentations was justifiable."

Plaintiff thereafter filed his second amended complaint (SAC) adding new causes of action against defendant Moari for false acknowledgement and negligence, to which defendants again demurred.

## A. *The SAC*

The SAC alleges in pertinent part as follows:

Plaintiff is a resident of the State of Pennsylvania. Moari is a licensed real estate agent and notary public in California. Sarkis is married to Moari and acted as her agent in the real estate transactions alleged in the SAC. On August 1, 2007, Sarkis approached plaintiff to enter into a transaction whereby plaintiff would take title to certain real property in Oakland as a joint tenant along with Segadina. Sarkis informed him Segadina needed to take out a loan in the amount of $380,000 against the subject property but had been unable to obtain financing due to a low credit score. Sarkis represented the property generated rental income and operated at a profit. Sarkis asked plaintiff to cosign for a $380,000 loan against the property, and represented he was authorized to act as a real estate broker in the transaction, and he and Moari would draft the necessary documents.

Plaintiff initially declined the transaction, stating he did not want to acquire an interest in the property and was not interested in signing loan documents for which he would be personally liable. Sarkis stated the loan would be only a short-term one, and would be refinanced in three months, at which time plaintiff's name would be removed from title and he would no longer be personally liable for the loan. He represented he was familiar with Segadina's competence as a property manager, and she would manage the property for plaintiff's benefit and share the rents and other income from operation of the property with plaintiff. Plaintiff agreed to execute the loan documents under these conditions.

On or about September 1, 2007, Sarkis traveled to Philadelphia, Pennsylvania and presented the loan documents to plaintiff for his signature. Plaintiff signed the documents. Sarkis also presented him with Moari's notary book to sign. Plaintiff noticed Moari had already countersigned the book affirming she had already witnessed plaintiff signing the loan documents and notary book, which was not true. On November 7, 2007,

2

Segadina executed a grant deed transferring title to the property from herself to plaintiff and Segadina as joint tenants. The grant deed was recorded on November 21, 2007, and the loan was finalized and recorded on the same day.

Plaintiff is informed and believes the loan proceeds were thereafter distributed to defendants and Segadina. Under the terms of the oral agreement between plaintiff and defendants, February 21, 2008 was the three-month deadline for refinancing the loan. The loan was not refinanced on that date. Plaintiff contacted Sarkis on May 21, 2008, and asked him when the loan would be refinanced and he would be taken off title and removed from personal liability. Sarkis repeated the loan would be refinanced and plaintiff would be removed from personal liability and from title to the property. Plaintiff contacted Sarkis thereafter on September 1, 2008, and again on November 1, 2008, about the refinance. Sarkis told him he was working on the refinance and repeated the loan would be refinanced so that plaintiff would be removed from personal liability and title to the property.

Despite repeated requests, plaintiff's name was not taken off title, no refinance has taken place, and defendants have made no effort to remove plaintiff's obligations on the loan. Segadina has not paid any income generated from the property to plaintiff. Segadina reported to plaintiff on June 1, 2010, the monthly income from the property was $3,400, monthly expenses were $4,100, and she was no longer able to make mortgage payments on the loan. Plaintiff demanded Segadina agree to either remove his name from title or put the title in his name alone. She demanded plaintiff pay her $165,900 to obtain her signature on a quitclaim deed, reflecting her losses in managing the property.

In connection with his fraud cause of action against Moari and Sarkis, plaintiff alleged he entered into the transaction in actual and justifiable reliance on Moari and Sarkis's false representations, acting in concert with Segadina, that (1) the property operated at a profit, would be managed for his benefit, and plaintiff would share in its income; and (2) the loan would be refinanced within three months and plaintiff would be removed from title and personal liability for the loan at that time. He alleged his reliance was justifiable because (1) the defendants, including Segadina, represented themselves to

3

him as real estate professionals, experienced in brokering loans and managing real property; (2) Sarkis represented he was an experienced real estate professional familiar with the property and familiar with Segadina's competence as a property manager; (3) plaintiff was not himself a real estate professional; and (4) the promise of a refinance within three months addressed the concerns plaintiff had raised about minimizing his exposure to liability for the loan. Plaintiff alleged financial and emotional detriment stemming from his personal liability on the loan, Segadina's default in making loan payments, her failure to pay him any proceeds from the operation of the property, and her demand that he pay her more than $165,000 for signing a quitclaim deed in his favor.

In his second cause of action for breach of contract, plaintiff alleges the above transactions constituted an oral agreement which defendants breached by, among other things, failing to refinance the loan or remove him from title within the promised three-month time frame, retaining for themselves the proceeds of the loan, and failing to share with plaintiff the rents and other income derived from management of the property. In his third cause of action, plaintiff alleged defendants' failure to refinance within the promised time frame, and failure to share rents and income from the property with him also breached the covenant of good faith and fair dealing.

In his sixth and seventh causes of action for false acknowledgement and negligence,[1] plaintiff alleges defendant Moari was responsible for his losses because she notarized plaintiff's signature on the loan documents without observing him signing his name.

**B.** *Judgment and Appeal*

At the hearing on defendants' demurrer to the SAC, plaintiff represented that if the court provided him leave to amend his SAC, he would amend his fraud cause of action to allege he justifiably relied on defendants' statements because he and Sarkis were lifelong friends and had worked for the same real estate company. Plaintiff also argued he could

---

[1] Plaintiff's fourth and fifth causes of action for partition and accounting are alleged against Segadina alone.

amend his complaint against defendants to include a breach of fiduciary duty cause of action on the basis that defendant Moari is a real estate agent. The trial court sustained defendants' demurrer without leave to amend. The court found plaintiff had not adequately alleged justifiable reliance on the alleged representations of defendants. It found the oral contract claim time-barred by the two-year statute of limitations for such claims. It found no conduct alleged sufficient to support the cause of action for breach of the covenant of good faith and fair dealing, and ruled the false acknowledgement and negligence causes of action failed for lack of damage.

This appeal followed from the ensuing judgment dismissing his claims against Moari and Sarkis.[2]

## II.  DISCUSSION

Plaintiff contends the court erred in sustaining the demurrer, and in denying him one more opportunity to amend his complaint to state a viable cause of action. We agree plaintiff has sufficiently alleged intentional fraud, and should be allowed to proceed with that cause of action. As to all other causes of action, the demurrer was properly sustained, and plaintiff has not shown he can plead facts overcoming the defects in these causes of action.

### A.  *Fraud/Intentional Misrepresentation*

The trial court found plaintiff's fraud claim failed because he had not adequately alleged justifiable reliance on defendant's representations.

Here, defendants allegedly falsely represented the property operated at a profit and generated income in which he would share, the loan would be refinanced within three months, and plaintiff would then be removed from title and relieved of personal liability for the loan. He alleged his reliance on these representations was justifiable because (1) defendants, including Segadina, represented themselves as real estate professionals experienced in brokering loans and managing real property; (2) Sarkis represented he was an experienced real estate professional who was familiar with the property and familiar

---

[2] Plaintiff's claims against Segadina were not challenged by defendants' demurrer.

5

with Segadina's competence as a property manager; and (3) plaintiff was not himself a real estate professional. He further alleges his reliance was justifiable because defendants' promise of a refinance within three months addressed the concerns he had raised about minimizing his exposure to liability for the loan.

"In addition to pleading actual reliance, the plaintiff must set 'forth facts to show that his or her actual reliance on the representations was justifiable, so that the cause of the damage was the defendant's wrong and not the plaintiff's fault.' [Citation.] There must be more pled than a simple statement plaintiff justifiably relied on the statements. [Citation.] The complaint must contain 'allegations of facts showing that the actual inducement of plaintiffs . . . was justifiable or reasonable.' " (*Beckwith v. Dahl* (2012) 205 Cal.App.4th 1039, 1066–1067.) In an intentional misrepresentation case, the plaintiff's negligence in failing to discover the falsity of a statement is no defense, and the plaintiff is not held to the standard of precaution of a hypothetical, reasonable man. (*Id.* at p. 1067, citing *Whiteley v. Philip Morris, Inc.* (2004) 117 Cal.App.4th 635, 684.) Although the plaintiff " 'may not put faith in representations which are preposterous, or which are shown by facts within his observation to be so patently and obviously false that he must have closed his eyes to avoid discovery of the truth' " (*Seeger v. Odell* (1941) 18 Cal.2d 409, 415 (*Seeger*)), this is not generally a determination that can be made on the pleadings alone. " 'Except in the rare case where the undisputed facts leave no room for a reasonable difference of opinion, the question of whether a plaintiff's reliance is reasonable is a question of fact.' " (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1239, 1248 [holding factual question of whether reliance was manifestly unreasonable could not be made on the pleadings alone].)

In our view, the trial court erred in this case in holding plaintiff failed to sufficiently plead facts showing his reliance was justifiable. He alleged in substance defendants had superior knowledge and experience concerning the property's income, Segadina's managerial skills, and their ability to refinance the property in the time frame promised. Superior knowledge, if proven, can support a finding of justifiable reliance. (*McClain v. Octagon Plaza, LLC* (2008) 159 Cal.App.4th 784, 794.) " 'It is . . . well

6

settled that when a fact is peculiarly within the knowledge of the person making the representation and not within the knowledge of the person to whom it is made, the latter has the right to rely upon the representations of the former respecting such fact.' " (*Brownlee v. Vang* (1965) 235 Cal.App.2d 465, 475 (*Brownlee*), quoting *Bank of America v. Greenbach* (1950) 98 Cal.App.2d 220, 234.)  Plaintiff further alleged he was reassured by defendants' representation they would refinance the property within three months, a representation buttressed by defendants' status as real estate professionals experienced in brokering real estate loans.  A party's suspicions or concerns may be reasonably allayed by the other party's positive reassurances or representations. (*Brownlee*, at p. 476.)

While a reasonably prudent person in plaintiff's position might have performed his own investigation or demanded more documentation before putting himself at risk on a loan, reasonable minds could differ about whether the representations made to alleviate his concerns were so obviously false or baseless he " 'must have closed his eyes to avoid discovery of the truth.' " (*Seeger*, *supra*, 18 Cal.2d at p. 415.)  With the benefit of hindsight, and assuming the truth of plaintiff's allegations, he was certainly overly trusting and imprudent.  But whether his reliance was "manifestly unreasonable" cannot be determined from those allegations alone.  (*Ibid.*)

Even assuming for the sake of analysis plaintiff pleaded insufficient facts showing justifiable reliance, he should still have been allowed to amend his complaint to allege he and Sarkis were lifelong friends.  Friendship creates a relation of trust and confidence. (*Brownlee*, *supra*, 235 Cal.App.2d at p. 476.)  Numerous cases find friendship weighs heavily in favor of a finding of justifiable reliance.  (See *Lance v. Tillman* (*In re Tillman*) (Bankr. D.C. 1996) 197 B.R. 165, 171, and cases cited therein.)  "The courts reason that [people] are not to be faulted for relying on the honesty of close friends who take advantage of them." (*Ibid.*)  The trial court failed to take this factor into account in denying leave to amend.

Defendants also claim plaintiff failed to sufficiently allege their representations were false when made, or defendants' knowledge of their falsity.  We disagree.  Plaintiff

alleged, "Each of the representations made by DEFENDANTS was false." Regarding the property's profitability specifically, plaintiff alleged, "The PROPERTY has not generated any income," and the property "operates at a loss, as the monthly expenses are $4,100 and the monthly income is $3,400." He alleged Segadina demanded he pay her $165,900 for a quitclaim deed reflecting her losses in managing the property. He alleged Segadina had paid no rental or other income to him from the property whatsoever. He alleged she told him "she was no longer able to continue making mortgage payments on the loan because the PROPERTY was not generating sufficient income." Regarding the promise to refinance within three months, plaintiff alleged repeatedly no such refinance occurred. Plaintiff was not required to plead falsity with any greater specificity or repetition than he did.

Plaintiff's allegations regarding defendants' knowledge of the falsity of their representations were also sufficient. Regarding defendants' knowledge of the property's lack of profitability, he alleged the defendants "in doing the things alleged herein" acted as agents for one another "with the knowledge, consent, and permission of each other." Under this allegation, Segadina's knowledge concerning the true facts about the property as well as her liability for the falsity of statements she made about it to plaintiff can be imputed equally to Sarkis and Moari. (*Alhino v. Starr* (1980) 112 Cal.App.3d 158, 174.) Plaintiff further alleged Sarkis "presented himself as an experienced real estate professional familiar with the PROPERTY," and defendants acted in concert and as agents for each other. These allegations of concerted action by all three defendants to defraud plaintiff were reinforced by other fraud allegations showing all three defendants took actions and/or made representations to lure plaintiff into cosigning for the loan, and all three received proceeds once the loan closed. Regarding knowledge of the falsity of the promise to refinance within three months, plaintiff alleged defendants proposed to refinance the loan solely to lure him into the loan, certainly suggesting they did not believe the refinance could or would take place in that time frame. He alleged defendants represented themselves as real estate professionals knowledgeable about brokering loans. He alleged Sarkis repeatedly reassured him he was working on the refinance. It may be

8

inferred from these allegations Sarkis knew the promise of refinancing within three months was false when he made it.

We find the trial court erred in sustaining defendants' demurrer to plaintiff's first cause of action for intentional misrepresentation, and will reverse and remand on that basis.

## B. *Breach of Contract*

The trial court sustained defendants' demurrer to plaintiff's breach of contract cause of action on statute of limitations grounds. The alleged contract was an oral agreement whereby plaintiff agreed to take title to the property as a joint tenant and assume personal liability for a $380,000 loan secured by the property, and defendants promised they would refinance the property within three months after the execution of the loan so plaintiff would no longer be personally liable on the loan. The statute of limitations for breach of oral contracts is two years from the date of breach. (Code Civ. Proc., § 339, subd. (1).) The trial court found the breach was alleged to have occurred in May 2008, when no refinance had taken place as promised.[3] The court reasoned that by the time the original complaint in this case was filed in September 2010, the two-year statute of limitations had run out on plaintiff's breach of contract claim several months earlier.

Plaintiff contends the breach of contract is not barred by the statute of limitations because, as alleged in the SAC, defendants' promise to refinance was "renewed" on or about November 1, 2008, when he contacted Sarkis, reminded him the deadline for removing him from title on the property had passed, asked Sarkis when that would occur, and Sarkis reiterated that he would refinance the loan. Plaintiff states his conversation with Sarkis in November 2008 was "[t]he most recent renewal."

A cause of action for breach of contract ordinarily accrues at the time of breach, and the statute begins to run at that time regardless of whether any damage is apparent or

---

[3] Actually, plaintiff alleged the three-month period for refinancing the loan expired on February 21, 2008, under the terms of the oral contract. He first contacted Sarkis about this in May 2008 to remind him the deadline had already passed.

9

whether the injured party is aware of his or her right to sue. (3 Witkin, Cal. Procedure (5th ed. 2008) Actions, § 520, p. 664.) The oral contract alleged in this case was breached no later than February 21, 2008.[4] As alleged in the SAC, what occurred on November 1 is that plaintiff inquired about the status of the refinance, and Sarkis told him he was still working on it and would refinance the loan. No facts are pleaded showing new consideration was tendered for Sarkis's November 2008 promise to refinance, or that a new contract was formed at that time. He makes no claim Sarkis was trying to cure the breach. (See *Cardinal Health 301, Inc. v. Tyco Electronics Corp.* (2008) 169 Cal.App.4th 116, 133–134.) In fact, plaintiff specifically alleged, "none of the DEFENDANTS have made any effort to remove his obligations on the loan." Plaintiff also makes no claim Sarkis's representation in November 2008 induced him to forbear from filing suit until after the statute of limitations had run, nearly two years later. (See *Battuello v. Battuello* (1998) 64 Cal.App.4th 842, 847–848.) Thus, no facts are pleaded that, if true, would have started a new limitations period for plaintiff's breach of oral contract claim after September 2008, or delayed or tolled the limitations period that otherwise expired by February 21, 2010, at the latest.

The trial court properly sustained defendants' demurrer to plaintiff's breach of contract claim against them.

## C. *Breach of the Covenant of Good Faith and Fair Dealing*

Plaintiff alleged defendants breached the covenant of good faith and fair dealing implied in every contract by (1) inducing him to execute the loan documents with a promise to refinance the loan after three months, and then failing to do so; and (2) failing to share rent and income from management of the property with him.

---

[4] Plaintiff alleged defendants breached the oral contract by, among other things, retaining to themselves the proceeds of the loan and not sharing with plaintiff the rents and income from the property. These alleged breaches occurred before February 21, 2008.

The trial court sustained defendants' demurrer without leave to amend since plaintiff did not identify any conduct that frustrated the purpose of the underlying contract beyond those facts that simply allege a breach of the contract.

On appeal, plaintiff contends Sarkis and Moari "frustrated the purpose of the contract by failing to refinance the loan." By repeating this argument, plaintiff merely confirms he cannot identify conduct by defendants supporting his breach of implied covenant claim other than the same conduct alleged as the basis for his breach of oral contract claim. "[E]very contract imposes upon each party a duty of good faith and fair dealing in the performance of the contract such that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." (*Storek & Storek, Inc. v. Citicorp Real Estate, Inc.* (2002) 100 Cal.App.4th 44, 55.) If merely failing to perform an express contractual promise could constitute a breach of the covenant of good faith and fair dealing, every contract breach claim would violate the covenant. A covenant of good faith and fair dealing must be *implied* from the terms of the contract. It is distinct from the contract's *express* promises. Thus, there can be no implied covenant of good faith as to a subject completely covered by the contract. (*Third Story Music, Inc. v. Waits* (1995) 41 Cal.App.4th 798, 804.) A claim for breach of the covenant that merely repeats and realleges the same allegations set forth in a companion claim for breach of contract is properly dismissed as superfluous. (See *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 352–353.)

The trial court properly sustained defendants' demurrer to plaintiff's cause of action for breach of the covenant of good faith and fair dealing.

## D. *False Acknowledgement and Negligence*

Plaintiff alleges Moari falsely or negligently certified he personally appeared before her to sign the loan documents when, in fact, he was not in her presence when he signed them. He alleges the loan was recorded "[b]y virtue" of Moari's false certification, and he was therefore damaged as a proximate result of her fraudulent or negligent certification. The trial court sustained defendants' demurrer to these causes of

11

action on the grounds no specific damage could be attributed to the documents not being properly notarized, since he admits he did sign the documents and knew what he was signing.

We agree plaintiff has not pled facts connecting Moari's allegedly improper notarization to any damage or detriment he has suffered. Under the facts as alleged in the SAC, plaintiff became liable for the loan because he agreed to sign and did sign the loan documents, not because Moari falsely notarized his signature. Plaintiff does not deny the genuineness of his signatures on the loan documents. He does not allege Moari caused him to become liable for the loan by improperly notarizing his signature, nor does he allege any other facts showing how Moari's alleged breach of her duties was a proximate cause of damages he incurred.

Plaintiff cites *Iselin-Jefferson Financial Co. v. United California Bank* (1976) 16 Cal.3d 886 (*Iselin-Jefferson*) for the proposition that the breach of a duty by a notary can lead to liability. The issue in *Iselin-Jefferson* was "whether a notary public may be liable to a purchaser of accounts receivable for negligently acknowledging a *forged* signature on a guaranty agreement." (*Id.* at p. 888, italics added.) In that case, the purchaser of accounts receivable demanded written guarantees signed and acknowledged by the four principals of the company owing on the accounts, including a Mrs. Durkin. (*Ibid.*) The notary falsely acknowledged the presence and signature of Mrs. Durkin, even though she had refused to sign and her signature had been forged to her purported guarantee. (*Ibid.*) The evidence showed the plaintiff relied upon and would not have agreed to purchase the accounts receivable without Mrs. Durkin's guarantee. (*Id.* at p. 889.) The defendants asserted Mrs. Durkin's guarantee was valueless since she had no assets at the time of trial and, therefore, the notary's negligence did not proximately cause the plaintiff's damage. (*Ibid.*) The Supreme Court rejected that premise, finding Mrs. Durkin's financial circumstances at the time of trial did not mean a judgment against her, enforceable for at least 10 years, could not have some future value, and because the notary's negligent act "must be viewed as a proximate cause of plaintiff's injury because

12

the act induced plaintiff to enter into an agreement it would not otherwise have made resulting in its substantial losses." (*Id.* at pp. 889–890.)

*Iselin-Jefferson* underscores the problem with plaintiff's pleading in this case. It is apparent from the Supreme Court's careful analysis of proximate cause in *Iselin-Jefferson* that a notary cannot be civilly liable for breach of duty absent facts showing the notary's breach caused damage to the plaintiff. Here, plaintiff's alleged damages were caused by his assuming personal liability for a loan secured by the property. He cannot allege Moari's alleged negligence or breach of duty misled him into entering the loan transaction, as the plaintiff in *Iselin-Jefferson* did. In fact, plaintiff alleges he was aware of the problem with Moari's notarization at the time he signed the loan documents. Plaintiff cites no legal authority for the proposition a notary can be liable to the signator in that fact pattern, and he pleads no facts showing such liability could exist in this case.

The trial court properly sustained Moari's demurrer to the sixth and seventh causes of action.

## III. DISPOSITION

We reverse the judgment and remand to the trial court for further proceedings on plaintiff's first cause of action for fraud/intentional misrepresentation. In all other respects, we affirm the order sustaining defendants' demurrer to the second amended complaint. Each side shall bear its own costs on appeal.

_____
Margulies, Acting P.J.

We concur:

_____
Dondero, J.

_____
Banke, J.

13